**Franklin Darnell JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–96–00052–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted April 8, 1997.

Decided April 9, 1997.

Jones was charged with selling crack cocaine to an undercover informant who was employed by the Drug Enforcement Agency in May of 1994. He was indicted on October 30, 1995, and arrested when he appeared at police headquarters in February of 1996 to turn himself in.

█ Jones contends that the trial court erred by failing to file findings of fact and conclusions of law in support of its ruling admitting eyewitness identification testimony over his motion to suppress. We initially recognize that where the issue of voluntariness of written statements of a defendant is raised, a trial judge must enter findings of fact in support of his conclusion that a statement made by an accused is voluntary. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979) is mandatory and requires the trial court to file written findings regardless of whether the defendant does or does not object. *Green v. State*, 906 S.W.2d 937 (Tex. Crim.App.1995). This article, however, does not apply to the admission of eyewitness identification testimony.

Jones directs this court to *Martinez v. State*, 437 S.W.2d 842 (Tex.Crim.App.1969), to support his contention that written findings are necessary in this context. The court in *Martinez* stated that it would be better practice for written findings to be provided when a motion to suppress eyewitness testimony is denied, but did not require that such be provided. In the absence of authority requiring that such findings be made, their absence is not error.

█ Jones next contends that the evidence was insufficient to support the court's ruling admitting the testimony. A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. A two-step analysis is therefore used to determine the admissibility of an in-court identification: 1) whether the out-of-court identification procedure was impermissibly suggestive; and 2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Barley v.*

Ebb B. Mobley, Longview, for appellant.

Angela J. Norton, Asst. Criminal District Attorney, Gilmer, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

OPINION

GRANT, Justice.

Franklin Jones appeals from his conviction for the offense of delivery of cocaine. A jury convicted Jones and assessed his punishment at twenty-five years' imprisonment.

*State,* 906 S.W.2d 27, 33 (Tex.Crim.App. 1995). An analysis under these steps requires an examination of the "totality of the circumstances" surrounding the particular case and a determination of the reliability of the identification. *Barley,* 906 S.W.2d at 33.

■ The courts uniformly condemn the practice of showing a single photograph to a prosecuting witness as a "photo spread" and find such a practice to be impermissibly suggestive. *Delk v. State,* 855 S.W.2d 700, 707 (Tex.Crim.App.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *Hubbard v. State,* 496 S.W.2d 924 (Tex.Crim.App. 1973); *Boyd v. State,* 472 S.W.2d 125 (Tex. Crim.App.1971).

■ Even when the procedure is impermissibly suggestive, as in this case, the in-court identification by an eyewitness is admissible if the record clearly shows that the witness's prior observations were sufficient to serve as an independent origin for the in-court identification. *Herrera v. State,* 682 S.W.2d 313 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (1985); *Crawford v. State,* 770 S.W.2d 51, 52 (Tex.App.-Texarkana 1989, no pet.).

■ In the present case, at the suppression hearing on identification, the undercover officer who made the drug purchase testified at length about the factors that assisted him in identifying the defendant, including that he was unusually large; that he was in close proximity to Jones for several minutes, in good light, while making the purchase; and that he had been trained to observe the physical characteristics of individuals in order to make such identifications. It is, however, also worthy of note that the officer apparently missed Jones's weight by over one hundred pounds. He estimated Jones's weight at 210–220 pounds, but the testimony indicates that Jones weighed over 300 pounds at the time of the offense.

The undercover officer also testified that he saw a photograph of Jones, supplied to him by a local officer six days after the transaction. The local officer had told the undercover officer that his description of the suspect matched that of Franklin Jones. The undercover officer testified that he had looked at the picture only to verify this. The undercover officer unequivocally testified that the defendant was the person from whom he made the purchase and· that his identification was made solely from his observations of the defendant at the time of the offense.

This testimony shows that the officer had opportunity to make a sufficient prior observation of Jones to serve as an independent source of his in-court identification. Based upon this evidence, we find that his observations and descriptions of Jones have a sufficient independent origin to support the in-court identification. This point of error is overruled.

Jones next contends that the trial court erred by denying his motion to dismiss for failure to provide him with a speedy trial as guaranteed under the U.S. Const. amend. VI and Tex. Const. art. 1, § 10. The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right to a speedy trial. The Texas Constitution guarantees the same right in Article I, § 10.

■ To determine whether an accused has been denied the right to a speedy trial, the trial court employs the balancing test set out in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972). In reviewing Jones's contention, we apply the *Barker v. Wingo* balancing test de novo.[1] *Emery v. State,* 881 S.W.2d 702, 708 (Tex. Crim.App.1994). Under this test, we consider four factors: the length of delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant resulting from that delay. *Deeb v. State,* 815 S.W.2d 692, 704 (Tex.Crim.App. 1991), *cert. denied,* 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992). *Holmes v.*

---

1. There is some disagreement about whether appellate review should be de novo, or whether we should review the trial court's ruling on the matter using an abuse of discretion standard. We discussed this issue in *Holmes v. State,* 938 S.W.2d 488 (Tex.App.-Texarkana 1996), and concluded that we are required to independently consider the evidence.

*State,* 938 S.W.2d 488 (Tex.App.-Texarkana 1996). Jones makes no separate argument on Texas constitutional grounds.

No specific length of delay automatically constitutes a violation of the right to a speedy trial, and the delay is measured from the time the defendant is formally accused or arrested, whichever occurs first. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Hull v. State,* 699 S.W.2d 220, 221 (Tex.Crim.App.1985). It has been held that any delay over eight months is presumptively unreasonable. *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App. 1992); *State v. Perkins,* 911 S.W.2d 548, 552 (Tex.App.-Fort Worth 1995, no pet.).

In the present case, the offense occurred on May 12, 1994. The case report was not filed with the District Attorney until October 24, 1995, the indictment is dated October 30, 1995, and Jones was arrested in February 1996, when he turned himself in. This seventeen-month delay between the offense and the accusation does not bode well for either the State's or the defense's ability to obtain witnesses who can recall in any detail the occurrences of a particular date that far in the past, but under the authority cited above, this delay is not part of our review. Our review is based upon the time period from accusation (indictment) to trial. In this case, the relevant time frame is between October 30, 1995 and July 12, 1996, approximately eight and one-half months.

Even after an indictment was returned, it does not appear that any effort was made to arrest Jones until he turned himself in because he had heard that an indictment had been handed down against him. He was arrested in February 1996.

We first look at the length of delay. Under *Marion,* our review covers only the time between his indictment on October 30, 1995 and trial on July 12, 1996. Eight and one-half months elapsed between the time of his indictment and the date of trial. This time period is sufficient to trigger our review of his speedy trial contention. *Harris,* 827 S.W.2d 949. This is a longer delay than is appropriate for a case of this nature, but it is not an extraordinary delay.

The reasons for the delay are not entirely clear. There is no indication why the State made no effort to arrest Jones for four months after the indictment was handed down. After his arrest, however, matters proceeded at a considerably more accelerated pace. Two motions to amend the indictment were granted in March and May, and a pretrial hearing was evidently held on May 28. Jury selection began on July 8. No motions for continuance were filed by either the State or Jones.

Jones asserted his right to a speedy trial in a motion to dismiss filed on May 28, 1996. At that time only seven months had elapsed since his indictment, and the presumptive impact of an eight-month delay had not yet been reached.

Jones alleges that the delay prejudiced him because the former girlfriend who might have provided him with an alibi as to his activities on the day in question had disappeared during the two-year hiatus, and he had been unable to locate and contact either her or her parents, despite visiting their respective former homes and searching telephone information records. On cross-examination, however, he admitted that he did not know whether Ms. Bruns (the girlfriend) knew where he was on the night of the offense, that his suggestions about the content of her testimony were speculative, and that he was trying to see if she could help him. We do not find the testimony sufficient to present a showing of prejudice from the delay.

After balancing the factors set out above, we find that the time that elapsed between accusation and trial is only marginally excessive and that the State was responsible for at least four months of that delay. We also find that after Jones was actually arrested, the prosecution proceeded with some speed. There is no clear showing that Jones was unable to present his defense because of the delay, and there is no clear showing that the lost witness would have been able to provide testimony that could exonerate him. We conclude that Jones's right to a speedy trial was not violated.

The judgment of the trial court is affirmed.