**Jeanette Marie GREENE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–02–00485–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 20, 2003.

Robert Morrow, Hocker & Morrow, Boyd & Mathews, Spring, TX, for Appellant.

Donald W. Rogers, Jr., Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

SHERRY RADACK Chief Justice.

A jury convicted appellant, Jeannette Marie Greene, of arson. Appellant stipulated to two prior felony convictions, and the trial court assessed punishment at 25 years' confinement. We affirm.

### Background

Darrell Greene was appellant's former common-law husband, and Kathie Ritchie was his girlfriend. On October 8, 2001, someone set Ritchie's car on fire. The State presented evidence that appellant had been involved in a physical altercation and had argued with Darrell Greene the day before the arson. The State also produced telephone messages to Ritchie, on which appellant's voice was positively identified, stating, "You know what Bitch, I may kill each one of ya'll slowly. You know what, you better go outside. Because you know, right there on the side

right there it's a Corona bottle filled up with gasoline." The evidence showed that the car was burned after having been doused with an accelerant and that a Corona bottle smelling of gasoline was found nearby.

The State also produced the eyewitness testimony of Reginald Guy, who told the arson investigator at the scene of the crime that he had seen a short, dark-complexioned woman leaving the scene of the arson in a silver or grey Taurus with newspaper over the license plate. Later that day, after having been shown a driver's license picture of appellant by police, Guy identified her as the woman whom he had seen driving away. He also identified her in court.

There was evidence that, even though appellant did not own a Taurus, she was driving a rented Taurus of the day on the arson.

### Ineffective Assistance of Counsel

In point of error one, appellant contends that she received ineffective assistance of counsel at trial. Specifically, appellant contends that her attorney should have filed a motion to suppress Guy's in-court identification of her as the person whom he had seen fleeing the crime scene. She argues that Guy's identification was tainted by an impermissibly suggestive pretrial identification, which she alleged occurred when the police showed Guy appellant's driver's license and asked if appellant was the woman whom Guy had seen fleeing the scene of the arson.

■ The legal standard set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to appellant's claim. To prevail on her claims, appellant must first show that

her counsel's performance was deficient. *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim.App.2002). Specifically, appellant must prove, by a preponderance of the evidence, that her counsel's representation fell below the objective standard of professional norms. *Id.* Second, appellant must show that this deficient performance prejudiced her defense. *Id.* Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Id.* Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Id.* Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id., quoting Thompson v. State,* 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999).

■ We acknowledge that many Texas courts have held that showing a witness a "photo spread" containing a single photograph is an impermissibly suggestive pretrial identification procedure,[1] and we in no way endorse the use of such a pretrial identification procedure. However, because there is nothing in the record to show why counsel chose not to attempt to have Guy's in-court identification suppressed in this case, appellant cannot meet the first prong of the *Strickland* test. *See Bone,* 77 S.W.3d at 830 ("We are once

---

1. *See Delk v. State,* 855 S.W.2d 700, 706 (Tex. Crim.App.1993); *Jones v. State,* 944 S.W.2d 50, 52 (Tex.App.-Texarkana 1997, pet. ref'd),

again asked whether an appellate court may reverse a conviction on ineffective assistance of counsel grounds when counsel's actions or omission may have based upon tactical decisions, but the record contains no specific explanation for counsel's decisions. Once again, we answer that question 'no.' ").

> Because the court [of appeals] itself did not discern any particular strategy or tactical purpose in counsel's trial presentation, it therefore assumed that there was none. This inverts the analysis. Under *Strickland,* the defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission. From this trial record, one could conclude that there were legitimate and professionally sound reasons for counsel's conduct or one could speculate that there were not. Under our system of justice, the criminal defendant is entitled to an opportunity to explain himself and present evidence on his behalf. His counsel should ordinarily be accorded an opportunity to explain her actions before being condemned as unprofessional and incompetent.

*Id.* at 836. We do not believe that appellant has met her burden of showing that counsel had no plausible trial strategy in failing to object to Guy's in-court identification, and we will not speculate about the lack of trial strategy simply because we do "not discern any particular strategy or tactical purpose." *Id.* Therefore, we conclude that appellant has failed to meet the first prong of the *Strickland* test.

■ Furthermore, we believe that appellant also fails to meet the second prong of *Strickland.* Even if appellant had successfully challenged Guy's in-court identification, the remaining evidence would have been legally sufficient to tie appellant to the arson. Evidence that Guy told the arson investigator that he saw a short, dark-complexioned woman fleeing the scene of the crime in a Taurus with newspaper on the license plate would have been admissible because it occurred before the allegedly suggestive pretrial procedure, *i.e.,* before police showed Guy appellant's driver's license. There was other evidence, from which the jury could have rationally concluded that appellant was, in fact, the unidentified woman whom Guy had seen. The jury was able to see appellant and to determine whether she was short and dark-complexioned, as Guy had described the woman to the arson investigator. The jury also heard appellant's voice on the audiotaped telephone messages, in which she had threatened to burn the victim using gas from a Corona bottle; a Corona bottle smelling of gasoline was recovered from the scene. There was also Guy's untainted testimony that he had seen a silver Taurus leaving the scene of the arson. One of appellant's own witnesses testified that appellant was driving a rented Taurus on the day of the arson, although he believed that it was brown or tan.

■ Identity of a perpetrator can be proved by direct or circumstantial evidence; eyewitness identification is not necessary. *See Earls v. State,* 707 S.W.2d 82, 85 (Tex.Crim.App.1986). We believe that there is sufficient circumstantial evidence to identify appellant as the perpetrator in this case. First, there was evidence that appellant's voice was identified on the victim's answering machine, on which she made very specific threats against the victim. The arson committed was very similar to the threats made by appellant. Second, there was evidence of the acrimonious history between the two women. Third, there was evidence that Guy saw a woman generally matching appellant's description fleeing the scene of the crime. Fourth,

there was evidence that the woman whom Guy saw was driving a Taurus, as well as evidence that appellant was driving a rented Taurus on the day of the offense. Thus, even if Guy's identification of appellant had been suppressed, the remaining evidence would have been legally sufficient for the jury rationally to conclude that appellant committed the arson.

Because appellant is not able to show to a reasonable probability that, but for the alleged deficiency, a different verdict would have been reached, she fails to meet the second prong of the *Strickland* test. *See Herron v. State,* 86 S.W.3d 621, 634 (Tex.Crim.App.2002).

Accordingly, we overrule point of error one.

## *Motion to Substitute Counsel and Motion for Continuance*

### *1. Relevant Facts*

Appellant was originally indicted in this case under cause no. 890309 and was represented by retained counsel, Douglas Haynes, as early as October 10, 2001. The prior indictment was apparently dismissed, and the case was reindicted under the present cause number on March 11, 2002. Douglas Haynes continued as retained counsel under the new indictment, and the case was set for a pretrial conference on March 28, 2002.

On that date, appellant filed a motion to substitute counsel and a motion for continuance of the trial date, which were set for the following week. Appellant wanted to have Kenneth David Cager represent her, rather than Douglas Haynes.

The trial court held a hearing on the motion to substitute, at which Cager represented to the court that he could not be prepared in time for the trial setting the following week. Rather than delay the trial setting, the trial court denied the motions to substitute and for continuance,

but stated that she would reconsider the motion to substitute in the event that the court did not reach the case the following week.

### *2. Law and Analysis*

In point of error two, appellant contends that the trial court violated her Sixth Amendment right to counsel of her choice by denying the motion to substitute counsel and motion for continuance. *See* U.S. CONST. amend. VI.

■ The Texas Rules of Criminal Procedure provide that "[a] criminal action may be continued on the written motion ... of the defendant, upon sufficient cause shown." TEX.CODE CRIM. PROC. ANN. art. 29.03 (Vernon 1989). Granting or denying a motion for continuance is within the discretion of the trial court and will not be reversed on appeal unless it is shown that the court abused its discretion. *Janecka v. State,* 937 S.W.2d 456, 468 (Tex.Crim. App.1996).

■ "The right to counsel of one's choice is not absolute, and may under some circumstances be forced to bow to 'the general interest in the prompt and efficient administration of justice.'" *Rosales v. State,* 841 S.W.2d 368, 374 (Tex. Crim.App.1992) (quoting *Gandy v. Alabama,* 569 F.2d 1318, 1323 (5th Cir.1978)). In deciding whether to grant a continuance because of the absence of the defendant's choice of counsel, the trial court should weigh the following factors: (1) the length of delay requested; (2) whether other continuances were requested and whether they were denied or granted; (3) the length of time in which the accused's counsel had to prepare for trial; (4) whether another competent attorney was prepared to try the case; (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court; (6) whether the delay is for legitimate or

contrived reasons; (7) whether the case was complex or simple; (8) whether the denial of the motion resulted in some identifiable harm to the defendant; and (9) the quality of legal representation actually provided. *Ex parte Windham,* 634 S.W.2d 718, 720 (Tex.Crim.App.1982).

Considering some of those factors in this case, we observe that: (1) the motion for continuance did not specify the length of the delay requested, but Cager stated that he would not be ready to proceed with the trial setting the following week; (2) the record does not reflect any prior motions for continuance, but does show that there had been some prior conflicts between appellant and Haynes regarding the filing of a motion to reduce bond; (3) the record shows that Haynes had represented appellant from at least October 10, 2001 through March 28, 2002; and (4) despite the apparent conflicts between appellant and Haynes over the motion to reduce bond, appellant did not seek to replace Haynes as counsel of record until one week before trial, even though the case had been pending for over 170 days; (5) Cager, appellant's proposed new attorney, was not prepared to try the case; (6) the State was ready for trial, but the record does not otherwise indicate how the State, the trial court, or the witnesses would be prejudiced; (7) the trial was a serious matter, but not especially complex; (8) no particular prejudice to appellant, other than the fact that she never had her motion to reduce bond addressed before trial, is evident from the record; and (9) despite appellant's allegations of ineffective assistance of counsel, which we addressed earlier, Haynes had adequate time to prepare for trial and presented and cross-examined witnesses on appellant's behalf.

■ Although some of the *Windham* factors may favor the granting of the requested continuance, under an abuse-of-discretion standard, it is not our role to reweigh the factors, but to determine whether the trial court could reasonably have balanced them and concluded that the fair and efficient administration of justice weighed more heavily than appellant's right to counsel of his choice. *See Rosales,* 841 S.W.2d at 375 (applying *Windham* factors and determining that trial court did not abuse discretion in denying motion for continuance); *Daniels v. State,* 921 S.W.2d 377, 381 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd) (same). Under the circumstances of this case, we hold that the trial court did not abuse its discretion.

We overrule point of error two.

We affirm the judgment.

Justice JENNINGS, dissenting from the denial of en banc consideration. *See* Tex.R.App. P. 47.5.

TERRY JENNINGS, Justice, dissenting from denial of en banc consideration.

The panel opinion takes obiter dictum from the Texas Court of Criminal Appeals and erroneously utilizes it in resolving this case, resulting in a direct conflict with the well-established precedent of this Court and the Court of Criminal Appeals. The opinion's implicit assumption that there could have been a "plausible trial strategy" in the decision of appellant's trial counsel not to move to suppress the identification testimony of the sole eyewitness in this case is truly extraordinary. Moreover, the opinion erroneously concludes that the "remaining evidence" was "legally sufficient" to uphold appellant's conviction and infers that "appellant is not able to show to a reasonable probability that, but for the alleged deficiency, a different verdict would have been reached." Accordingly, I respectfully dissent from the denial of en

banc consideration. *See* TEX.R.APP. P. 41.2(c).

In her first point of error, appellant contends that her trial counsel was ineffective in failing to move to suppress the in-court identification testimony of Reginald Guy because "the pretrial identification procedure in which the *only* eyewitness identified the defendant by looking at only one photograph, her driver's license, was impermissibly suggestive and gave rise to a very substantial likelihood of irreparable misidentification."

### Facts

A jury found appellant guilty of arson after she was charged with setting her ex-husband's car on fire. In regard to the identification issue, the facts are simple. Reginald Guy, testified that, from the kitchen window of his apartment, he saw appellant as she was leaving the scene. Later that day, an arson investigator showed Guy appellant's driver's license, with photograph, and Guy then identified appellant as the person whom he saw leaving the scene of the arson.

### Ineffective Assistance

The United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense." U.S. CONST. amend. VI. The panel opinion correctly sets out the appropriate standard of review for claims of ineffective assistance of counsel, as articulated in *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984) and *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002).

To prevail on her claims, appellant must first show that her counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2071; *Bone*, 77 S.W.3d at 833. Specifically, appellant must prove, by a preponderance of the evidence, that her counsel's representation fell below the objective standard of professional norms. *Bone*, 77 S.W.3d at 833. Second, appellant must show that this deficient performance prejudiced her defense. *Id.* This means that appellant "must show a *reasonable probability* that, but for [her] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (emphasis added). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*

The panel, in its opinion, concludes that "because there is nothing in the record to show why counsel chose not to attempt to have Guy's in-court identification suppressed in this case, appellant cannot meet the first prong of the *Strickland* test." This is not the law.

In reaching its conclusion, the panel relies on the following obiter dictum from the Court of Criminal Appeals:

> [R]arely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: "[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel."

*Bone*, 77 S.W.3d at 833 (*quoting Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim.App.1999)). However, this simple statement does not end the required legal analysis.

*Bone* is substantively distinguishable from the instant case. In *Bone*, the defendant argued that his trial counsel performed deficiently in (1) failing to pursue prejudice among prospective jurors, (2) making offensive comments about drinking and driving, (3) failing to offer significant favorable evidence during the punishment phase of trial, (4) offering harmful evi-

dence during the punishment phase of trial, (5) failing to object properly to the admission of a document into evidence, and (6) making statements that affirmatively prejudiced the defendant. *Bone*, 77 S.W.3d at 832. In addressing these points, the Court noted that the defendant's trial counsel could have had various strategic reasons for acting as she did, and it noted that, "[f]rom this trial record, one could conclude that there were legitimate and professionally sound reasons for counsel's conduct or one could speculate that there were not." *Id.* at 836. The Court emphasized that "[a] vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent." *Id.* at 836. The Court held that an appellate court may not reverse a conviction on ineffective-assistance-of-counsel grounds "when counsel's actions or omissions *may have been based upon tactical decisions,* but the record contains no specific explanation for counsel's decisions." *Id.* at 830 (emphasis added).

Here, in stark contrast, there could be no possible "tactical" strategy at all in the decision of appellant's trial counsel not to move to suppress the identification testimony of the sole eyewitness in this case. It is patently unreasonable for a defense lawyer to allow the State a chance at convicting his client when he could have precluded the State from having a case at all by suppressing the testimony from its only eyewitness. It is also patently unreasonable for a defense lawyer to fail to move to suppress the identification testimony of the sole eyewitness when the suppression of that testimony would have substantially weakened the State's case.

This Court has consistently recognized that "*a single egregious error of omission or commission* by counsel has been held to constitute ineffective assistance, *even in*

the absence of a record setting forth counsel's reasons for the challenged conduct." *McKinny v. State,* 76 S.W.3d 463, 470–71 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (emphasis added); *see also Alvarez v. State,* 79 S.W.3d 679, 681 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Valencia v. State,* 966 S.W.2d 188, 190–91 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd); *Cooper v. State,* 769 S.W.2d 301, 305 (Tex. App.-Houston [1st Dist.] 1989, pet. ref'd); *Snow v. State,* 697 S.W.2d 663, 667 (Tex. App.-Houston [1st Dist.] 1985), *pet. dism'd, improvidently granted,* 794 S.W.2d 371 (Tex.Crim.App.1987).

More importantly, the Court of Criminal Appeals has also recognized that there are indeed cases in which the trial record contains sufficient information to permit a reviewing court to fairly evaluate the merits of an allegation of ineffective assistance of counsel. *See Thompson,* 9 S.W.3d at 814; *see Vasquez v. State,* 830 S.W.2d 948, 951 (Tex.Crim.App.1992) (per curiam) (holding counsel ineffective for failing to request necessity instruction when raised by evidence).

The crucial point is that, in the rare case in which the record on direct appeal is sufficient to prove that counsel's performance was deficient, "an appellate court should obviously address the claim." *Robinson v. State,* 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000); *McKinny,* 76 S.W.3d at 471. Here, because the record of the jury trial, on direct appeal, sufficiently demonstrates that the performance of appellant's trial counsel was deficient, this Court has an obligation to properly address appellant's claim of ineffective assistance of counsel. In utilizing the above expressed obiter dictum of the Court of Criminal Appeals to resolve this case, the panel opinion, in direct conflict with well-established precedent of this Court and

the Court of Criminal Appeals, has failed to fulfill our obligation.

### Deficient Performance

Appellant contends that the evidence in the record proves that her trial counsel was ineffective in failing to move to suppress Guy's in-court "identification testimony that never should have been admitted."

In this case, the question of whether the pretrial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor. *Loserth v. State,* 963 S.W.2d 770, 772–73 (Tex.Crim. App.1998). Accordingly, the mixed question of law and fact presented here is subject to de novo review. *Id.*

A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law.[1] *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Barley v. State,* 906 S.W.2d 27, 32–33 (Tex.Crim. App.1995). We apply a two-step analysis to determine the admissibility of an in-court identification, asking (1) whether the pretrial identification procedure was impermissibly suggestive and, if so, (2) whether the improperly suggestive procedure created a very substantial likelihood of irreparable misidentification. *Simmons,* 390 U.S. at 384, 88 S.Ct. at 971; *Barley,* 906 S.W.2d at 33. If a court finds that a pretrial identification procedure was impermissibly suggestive, the court must then consider the factors enumerated in *Neil v. Biggers* to determine whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidenti-

fication. *See id.,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). These factors are (1) the witness's opportunity to view the criminal, (2) the witness's degree of attention, (3) the accuracy of the suspect's description, (4) the level of certainty at the time of confrontation, and (5) the length of time between the crime and confrontation. *Id.,* 409 U.S. at 199, 93 S.Ct. at 382.

In regard to the first step, as noted by the Fourteenth Court of Appeals, "Texas Courts have uniformly condemned the practice of showing a single photograph to a prosecuting witness ... *finding this practice to be impermissibly suggestive."* *Bond v. State,* 29 S.W.3d 169, 172 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (emphasis added); *see also Delk v. State,* 855 S.W.2d 700, 706 (Tex.Crim.App.1993). As noted by the United States Supreme Court:

> Th[e] danger [that a witness will make an incorrect identification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw.... Regardless of how the original misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.

*Simmons,* 390 U.S. at 383–84, 88 S.Ct. at 971. Because the pretrial identification procedure in this case was impermissibly suggestive, we must consider the *Neil* factors.

Here, the record reveals that Guy saw appellant for seconds from 20 feet away as she was getting into a car and leaving the scene. He was standing at the kitchen sink in his apartment and getting a glass

---

1. *See* U.S. CONST. amend. XIV.

of water when he saw appellant through "partially open" mini-blinds. In regard to Guy's level of certainty at the time of the pretrial identification, on the same day that Guy saw appellant, the investigator handed Guy appellant's driver's license and asked him if she was the person whom he saw. As noted above, this procedure was inherently suspect and impermissibly suggestive.

The most important *Neil* factor is the witnesses's "inability to describe" a suspect "before the impermissibly suggestive act." *Loserth v. State*, 985 S.W.2d 536, 546 (Tex.App.-San Antonio 1998, pet. ref'd) (citing *Dispensa v. Lynaugh*, 847 F.2d 211, 220 (5th Cir.1988)). Here, Guy testified that he did not believe that he described appellant well to the investigating police officer and that the officer "didn't really ask much." Moreover, in regard to Guy's credibility, the State conceded in its closing argument that "[t]here was no doubt [Guy] was weird."

Thus, appellant has shown by clear and convincing evidence, firmly founded in the record, that the application of the *Neil* factors compels a finding that the suggestive procedure in this case gave rise to a substantial likelihood of irreparable misidentification. Had appellant's trial counsel moved to suppress Guy's pretrial and in-court identification of appellant, the trial court, based on the facts as firmly founded in the record, would have been compelled to suppress the identifications.

Accordingly, appellant has demonstrated by a preponderance of the evidence that her trial counsel's representation fell below an objective standard of professional norms. An objective review of the record demonstrates that the panel's conclusion that the record does not support appellant's claim that no sound trial strategy could have justified her counsel's decision not to move to suppress the identification testimony of the sole eyewitness in this case is truly extraordinary, in that it is logically precluded.

### Prejudice

The panel also concludes that appellant has failed to meet the second prong of *Strickland* because "[e]ven if appellant had successfully challenged Guy's in-court identification, the remaining evidence would have been *legally sufficient* to tie appellant to the arson." (Emphasis added.) In support of its conclusion, the panel relies on the following "circumstantial" evidence:

1. There was evidence that appellant left "very specific threats against" the complainant on his answering machine and that the arson committed was "very similar to the threats" made by appellant;

2. There was an "acrimonious history between" appellant and the complainant's new girlfriend;

3. There was evidence that Guy saw "a woman generally matching" appellant's description fleeing the scene of the crime; and

4. There was evidence that the woman whom Guy saw was driving a silver or grey Ford Taurus and that appellant was seen by another witness driving a rented brown or tan Ford Taurus on the day of the arson.

Thus, the panel infers that "appellant *is not able* to show a reasonable probability that, but for the alleged deficiency, a different verdict would have been reached." (Emphasis added.)

The panel's analysis confuses the legal sufficiency standard of review with the second prong of *Strickland*, which requires an appellant to "demonstrate a *reasonable probability* that, but for [the] deficiency, the outcome would have been different." *Herron v. State*, 86 S.W.3d 621, 634 (Tex.

Crim.App.2002) (emphasis added). As noted above, a "reasonable probability" has been defined as "a probability *sufficient to undermine confidence* in the outcome of the proceedings." *Id.* In conducting an analysis under the second prong of *Strickland,* the question for a reviewing court is not whether there was legally sufficient evidence to support a conviction. Rather, the pertinent question is whether the reviewing court's confidence in the conviction is sufficiently "undermined" to convince the court "that the result of the trial might have been different." *Vasquez,* 830 S.W.2d at 951.

By contrast, we review the legal sufficiency of the evidence by a much lower standard: viewing the evidence in the light most favorable to the verdict to determine if any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). "Circumstantial evidence" is defined as "direct proof of a secondary fact which, *by logical inference,* demonstrates the ultimate fact to be proven." *Taylor v. State,* 684 S.W.2d 682, 684 (Tex.Crim.App.1984) (emphasis added). Here, it must be emphasized that it does not necessarily follow, as "direct proof of a secondary fact," that, because an accused had a motive, had made threats, matched a "general" description of a suspect, and drove the same make of car as a suspect on the day of a crime, that, as "the ultimate fact to be proven," the accused is the one guilty of the crime.

More importantly, even if, viewing the remaining evidence "in the light most favorable to the verdict," a "rational fact finder *could have found* the essential elements of the crime beyond a reasonable doubt," it does not logically follow that such a fact finder *would* have found appellant guilty.

The evidence, as outlined in the panel opinion, shows just how critical Guy's testimony was in this case. Without Guy's testimony, the State would have been left with very little to support its case against appellant. At the very least, the weakness of this "remaining evidence" very seriously calls into question whether the jury would have convicted appellant in the absence of Guy's identification testimony. This is sufficient to "undermine confidence" in the outcome of appellant's trial.

## Conclusion

In reaching its decision, the panel disregards the well-established precedent of the Court of Criminal Appeals and of this Court that "*a single egregious error of omission* or commission by counsel [may] constitute ineffective assistance, *even in the absence of a record setting forth counsel's reasons for the challenged conduct.*" *McKinny,* 76 S.W.3d at 470–71 (emphasis added). The panel opinion also erroneously concludes that the "remaining evidence" was "legally sufficient" to uphold appellant's conviction and holds that "appellant is not able to show to a reasonable probability that, but for the alleged deficiency, a different verdict would have been reached."

The record demonstrates that the pretrial identification procedure used here created a very substantial likelihood of irreparable misidentification. Because appellant's trial counsel failed to move to suppress Guy's identifications of appellant, the trial court was not presented with the issue. Given the weakness of the remaining evidence, this omission should, in the words of the Court of Criminal Appeals, "undermine[ ] our confidence in the conviction sufficiently to convince us that the result of the trial might have been different" had the motion been properly raised. *Vasquez,* 830 S.W.2d at 951.

Accordingly, I respectfully dissent from the denial of en banc consideration of this case. *See* Tex.R.App. P. 41.2(c).