Opinion issued July 2, 2009












In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00284-CR




JOHN C. THEUS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 263rd District Court
Harris County, Texas
Trial Court Cause No. 1070888




MEMORANDUM OPINION
          A jury convicted appellant, John C. Theus, of murder, found that he had used
a deadly weapon, i.e., a firearm, and assessed punishment at life in prison. See Tex.
Penal Code Ann. § 19.02(b)(1–2) (Vernon 2003). Appellant challenges the legal
and factual sufficiency of the evidence, arguing that there were no eyewitnesses to the
crime. In addition, appellant contends that the trial court abused its discretion by
admitting certain hearsay statements.
          We affirm. 
                    Background
          Leon Jones shared an apartment with David Lipps, Andre Stewart, and
Anthony Harbour. Around May 5, 2006, appellant reported a burglary from his
friend’s apartment. Appellant, who is an acknowledged member of the 59 Bounty
Hunter “Bloods” gang, reported that some clothing and electronics had been stolen. 
On the same day, Harbour gave one of appellant’s stolen shirts to Jones. Appellant
and several other people came looking for Harbour at the apartment complex where
he shared an apartment with Leon Jones. Appellant saw Jones wearing one of his
stolen shirts, and appellant and the others attacked Jones. Appellant repeatedly asked
Jones where Harbour was, threatened to kill both Harbour and Jones, and took the
stolen shirt.
          Two days later, appellant returned to the apartment complex, again with a
group of people. Jones was in the stairwell talking to a neighbor who lived a floor
below him. Jones testified that appellant and the others acted like they were on a
mission. Appellant aimed a black handgun at Jones, who, feeling scared and
threatened, fled the area on foot. At trial, Jones described the gun as a .380. A few
minutes later, Jones saw Harbour climb out of the apartment window. After Harbour
climbed out of the window, Jones heard a shooting noise. At trial, Jones identified
appellant as the person who threatened him with a gun that night on the stairwell. 
Jones’s neighbor, Catina Stewart, also testified that she saw the gunman that night
and that appellant “resemble[d] the guy standing at the base of the stairs holding the
gun.”
          Meanwhile, Andre Stewart was also present that night. He reluctantly testified
that a gunman and three other people forced him into the apartment. Harbour was
there, and the gunman questioned him about the burglary, in particular another of his
stolen shirts, which Harbour was wearing at the time. Harbour removed the shirt,
shoved it at the gunman, and slammed the door, locking himself and Stewart, who
had stepped into the apartment, inside. Someone kicked the door, Harbour ran to the
back bedroom, and Stewart stayed near the door “because in my mind if somebody
is running, they’re guilty, so they’re shot.” 
          When appellant burst through the door, Stewart told him that he had nothing
to do with the burglary. Appellant walked to the back bedroom, and one of
appellant’s associates held Stewart at gunpoint with a shotgun. Unbeknownst to
Stewart, David Lipps was in the back bedroom. Stewart heard about five gunshots
coming from the bedroom. Stewart and the people who had held him at gunpoint all
fled the apartment. When Stewart returned later, he found Lipps dead, slumped near
the window, through which he had apparently been trying to escape.
          Although Stewart positively identified appellant as the gunman in a
photographic lineup, noting that appellant looked exactly like the person who held
the gun and that he could identify appellant by the prominent line across his forehead,
he vacillated at trial, saying that appellant was the closest match of the photographs
provided in the lineup. Stewart testified at trial that appellant did not look like the
man who held the handgun. Stewart also said that he did not want to testify and that
he had no choice about testifying in this case.
          Houston Police Department Detective M. Waters testified that Stewart had
positively identified appellant in a photographic lineup. Detective Waters also
testified that this was a gang-related crime, that stealing clothing with a gang
member’s colors is “tantamount to stealing their heart” and that the gang member
“has a responsibility to . . . get them back from the person who actually stole them.” 
          Anthony Harbour, who was incarcerated at the time of trial, also testified
reluctantly, and the trial court permitted the State to treat him as a hostile witness.


 
Harbour stated that someone kicked in the door that night, and he jumped out of the
bedroom window. He denied knowing either appellant or Leon Jones. He said that
he was not a good reader and that the police officers lied, wrote his statement, and
made him sign it, without his knowing what was in it. He testified that appellant was
not the gunman.
          K. Downs, a firearms examiner for the Houston Police Department, testified
that she examined the firearms evidence collected from the crime scene and
determined that the evidence came from a .38 caliber class firearm of revolver type. 
The assistant medical examiner for Harris County, who conducted the autopsy on
David Lipps’s body, testified that the cause of death was a gunshot wound through
the heart and that Lipps’s body had two gunshot wounds.
          Both appellant and his girlfriend testified on his behalf at trial. Appellant’s
girlfriend, Kristen Williams, said that appellant was with her the entire weekend that
complainant was murdered. She said that she clearly remembered the details of that
weekend because it was the weekend of a birthday party for appellant’s younger
brother, which they did not attend, and because it was about two weeks before her
senior prom. She also testified that appellant was commonly mistaken for other
people. She denied that appellant was a member of a gang or that he had any prior
convictions or any weapons convictions. Appellant also testified that he was with
Williams and denied belonging to a gang, but he admitted that he had a prior weapons
conviction. He also admitted making a police report about a burglary two days before
the shooting, although Williams denied that he had done so.
Legal and Factual Sufficiency
Standard of Review
          When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas
v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The standard is the same for
both direct and circumstantial evidence cases. King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995). We do not resolve any conflict of fact, weigh any evidence,
or evaluate the credibility of any witnesses, as this is the function of the trier of fact.
See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991). In conducting our review, we resolve
any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843.
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
          We may not substitute our judgment for that of the fact-finder. King v. State,
29 S.W.3d 556, 563 (Tex. Crim. App. 2000). The fact-finder alone determines what
weight to place on contradictory testimonial evidence because that determination
depends on the fact-finder’s evaluation of credibility and demeanor. Cain, 958
S.W.2d at 408–09. As the determiner of the credibility of the witnesses, the
fact-finder may choose to believe all, some, or none of the testimony presented. Id.
at 407 n.5. The standard for reviewing the factual sufficiency of the evidence is
whether, after considering all of the evidence in a neutral light, the jury was rationally
justified in finding guilt beyond reasonable doubt. Watson, 204 S.W.3d at 415.
Murder
          As charged, to prove that appellant committed the offense of murder, the State
had the burden to prove beyond a reasonable doubt that appellant intentionally or
knowingly caused the death of another person, David Lipps, by shooting him with a
deadly weapon, namely, a firearm or that appellant intended to cause serious bodily
injury and committed an act clearly dangerous to human life that caused the death of
David Lipps. See Tex. Penal Code Ann. § 19.02(b)(1–2) (Vernon 2003). Appellant
argues that the evidence is legally and factually insufficient because none of the
witnesses saw him kill the complainant. However, circumstantial evidence alone is
sufficient to establish guilt. Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App.
2004). “[E]yewitness identification is not necessary.” Greene v. State, 124 S.W.3d
789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). Nor is it necessary that
every fact point directly and independently to the defendant’s guilt; it is enough if the
conclusion is warranted by the combined and cumulative force of all the
incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim.
App. 1993). 
Legal Sufficiency

          Leon Jones testified that appellant threatened to kill Anthony Harbour two days
before the shooting and held him at gunpoint on the stairwell leading to the apartment
the night of the murder. Catina Stewart, Jones’s neighbor also saw appellant there
that night. Andre Stewart testified that a gunman forced his way into the apartment
and went into the back bedroom. Harbour testified that he jumped out of the bedroom
window where Lipps was later found, and Jones testified that he saw Harbour jump
out of the window moments before he heard gunshots. Andre Stewart also heard
gunshots coming from the bedroom just after the gunman entered it. Stewart
identified appellant as the gunman in a photographic lineup. After the shooting,
Lipps was found dead of a gunshot wound in the back bedroom, where it appeared
he attempted to flee through the window. Viewing the evidence in the light most
favorable to the verdict, we hold that a rational trier of fact could have found beyond
a reasonable doubt that appellant intentionally or knowingly caused the death of
David Lipps by shooting him with a firearm, a deadly weapon. See Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Drichas, 175 S.W.3d at 798.
          We overrule appellant’s first issue.
Factual Sufficiency
          Appellant argues that the evidence is also factually insufficient because there
were no eyewitnesses, Harbour testified in court that appellant was not the gunman,
and both appellant and his girlfriend testified that they were together all weekend.
Appellant argues that “the State only proved that appellant was at the location looking
for Anthony,” and because “[t]he person who got killed was not Anthony” the State
did not prove appellant shot complainant.
          As we have observed, eyewitness testimony is not required in a case such as
this. See Greene, 124 S.W.3d at 792. Moreover, the jury alone determines what
weight to give contradictory testimony. See Cain, 958 S.W.2d at 408–09. Although
Harbour testified that appellant was not the gunman, Jones testified that he was. In
addition, Andre Stewart definitively, positively identified appellant in a photographic
lineup after the murder. Stewart testified that the gunman went into the back
bedroom after Harbour and before the shots were fired. The jury was not required to
credit Habour’s testimony and discount all the other incriminating evidence, and,
their verdict suggests that the jury chose not to believe at least part of Harbour’s trial
testimony. See id. at 407 n.5
          Similarly, the jury was free to believe or disbelieve both Kristen Williams and
appellant. Although Williams testified that appellant was with her the entire
weekend, both cross-examination and rebuttal witnesses showed her to be unaware
of numerous facets of appellant’s life. In addition, both she and appellant had an
interest in keeping appellant from being convicted. 
          After considering all of the evidence in a neutral light, we hold that the jury
was rationally justified in finding appellant guilty of murder beyond reasonable a
doubt. See Watson, 204 S.W.3d at 415.
          We overrule appellant’s second issue.
Hearsay
          In his third issue, appellant argues that a hearsay statement made by Andre
Stewart allowed the State to prove that there was some disagreement between
Anthony Harbour and the shooter.
          To preserve error for appeal, a defendant must (1) object, (2) state the grounds
with sufficient specificity, and (3) obtain an adverse ruling. Tex. R. App. P. 33.1; see
Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); accord Nethery v. State,
692 S.W.2d 686, 701 (Tex. Crim. App. 1985); Zunker v. State, 177 S.W.3d 72, 78
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d). Failure to obtain an adverse ruling
waives error. See Zunker, 177 S.W.3d at 78. 
          Andre Stewart’s statement was that complainant said, “I ain’t got nothing to do
with it, dog,” twice before he was shot. The trial court sustained appellant’s objection
and sua sponte instructed the jury to disregard. Appellant received all of the relief he
requested; no error is preserved for appeal. Id.
          We overrule appellant’s third issue.
Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                             Jim SharpJustice


Panel consists of Chief Justice Radack and Justices Sharp and Taft.




Do not publish. Tex. R. App. P. 47.2(b).