

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JULIE DEANE HARRELL, | § | No. 08-13-00031-CR |
| Appellant, | § | Appeal from the |
| v. | § | 355th Judicial District Court |
| THE STATE OF TEXAS, | § | of Hood County, Texas |
| Appellee. | § | (TC# 12096) |
| | § | |

## O P I N I O N

Julie Deane Harrell appeals the trial court's judgment convicting her of fraudulent use or possession of identifying information. In a single issue, Harrell argues the trial court erred in denying her motion for continuance to retain counsel of her choice. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Harrell was indicted for fraudulently using or possessing her mother's checking account number and Visa debit card number. At that time, Harrell was represented by Matthew Mills, who also represented her fiancé and co-defendant, Russell Martin Moore. When Harrell failed to obtain new counsel as she promised, Mills—citing a conflict of interest—moved to withdraw. The trial court granted the motion.

Harrell then hired Alan Steele to represent her, but he was subsequently suspended from

practicing law. The trial court was informed of this development, found Harrell indigent, and appointed Andrew Ottaway to represent her. Ottaway met with Harrell to discuss the case. At the meeting, Ottaway informed Harrell that he previously represented her adoptive father in a civil matter and that he personally knew Harrell's family. Following his meeting with Harrell, Ottaway moved for a continuance "to hire a retained attorney."

Originally, Harrell had no problem with the fact that Ottaway knew her family and had previously represented her adoptive father in a personal injury lawsuit about twenty years ago. However, Harrell changed her mind on the eve of trial and asked Ottaway to withdraw so that she could hire an attorney who had never represented any of her family members. Ottaway initially agreed, but eventually did not seek to withdraw from representing Harrell because further research led him to believe that there was no conflict of interest and hence no statutory basis for his disqualification.

On the day of trial, the trial court heard Harrell's motion for continuance. Ottaway explained to the trial court that he was pursing the motion for continuance because he "was trying to do what [Harrell] asked . . . find a reason to withdraw or disqualify me from serving," even though "there's not a statutory, legal reason." Harrell informed the trial court that she wanted to hire counsel of her choosing because she did think "that it's a conflict of interest that [Ottaway] has represented the victims in this case." When asked by the trial court if she was dissatisfied with Ottaway's representation, Harrell responded that she was dissatisfied because Ottaway had not—as requested by her—moved for a change of venue and to withdraw.

The trial court then had Harrell testify to her ability to acquire the funds necessary to hire an attorney. Harrell testified that though she did not have any money to hire an attorney, Moore

and his family were attempting to raise funds to help her hire one. Moore testified that he could raise $2,000.00 and that he had "[an attorney] lined up" to represent Harrell. The trial court ordered Moore to prove he had the funds to hire an attorney for Harrell and gave him one hour to do so. Moore could not meet the deadline, and the trial court denied Harrell's motion for continuance.[1]

## DENIAL OF MOTION FOR CONTINUANCE TO RETAIN COUNSEL OF CHOICE

Harrell contends the trial court violated her Sixth Amendment right to counsel and her Fourteenth Amendment right to due process by denying her motion for continuance to retain counsel of her choice because, under the circumstances, the trial court's decision was "unreasonable and arbitrary." We disagree.

### *Applicable Law*

A defendant has a federal constitutional right, under both the Sixth and Fourteenth Amendments, to a reasonable opportunity to select and be represented by chosen counsel. *See Wheat v. U.S.*, 486 U.S. 153, 158, 108 S. Ct. 1692, 1696-97, 100 L. Ed. 2d 140 (1988)(the right to a reasonable opportunity to select and be represented by chosen counsel is one of the penumbra of rights afforded by the Sixth Amendment); *Gandy v. State of Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978)(the right to a reasonable opportunity to select and be represented by chosen counsel is one of the penumbra of rights afforded by the Due Process Clause of the Fourteenth Amendment). The right to chosen counsel is not absolute, and may under some circumstances be forced to bow to the general interest in the prompt and efficient administration of justice. *Rosales v. State*, 841 S.W.2d 368, 374 (Tex.Crim.App. 1992), *citing Gandy*, 569 F.2d at 1323; *Greene v. State*, 124 S.W.3d 789, 793 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd). Moreover, the defendant's

---

[1] The trial court also denied the motion to withdraw, but Harrell does not complain of this ruling on appeal.

right to chosen counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. *Ex parte Davis*, 818 S.W.2d 64, 66 (Tex.Crim.App. 1991); *Webb v. State*, 533 S.W.2d 780, 784 (Tex.Crim.App. 1976). Ultimately, the defendant carries the burden of proving that she is entitled to a change of counsel. *Malcom v. State*, 628 S.W.2d 790, 791 (Tex.Crim.App. 1982).

## Standard of Review

We review the trial court's denial of a defendant's motion for continuance to retain chosen counsel for abuse of discretion. *Greene*, 124 S.W.3d at 793. In deciding whether to grant or deny a motion for continuance to retain chosen counsel, the trial court should weigh the following non-exclusive factors: (1) the length of delay requested; (2) whether other continuances were requested and whether they were denied or granted; (3) the length of time in which the accused's counsel had to prepare for trial; (4) whether another competent attorney was prepared to try the case; (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court; (6) whether the delay is for legitimate or contrived reasons; (7) whether the case was complex or simple; (8) whether the denial of the motion resulted in some identifiable harm to the defendant; and (9) the quality of legal representation actually provided. *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex.Crim.App. 1982). A trial court does not abuse its discretion if it reasonably balances these factors and concludes that the fair and efficient administration of justice outweighs a defendant's right to retain chosen counsel. *Greene*, 124 S.W.3d at 794.

## Discussion

Harrell has not shown that the trial court abused its discretion in denying her motion for continuance to retain chosen counsel. On appeal, Harrell contends that the trial court abused its

4

discretion "by forcing [her] into an immediate trial" because, "given the entirety of the circumstances," "there was no strong or compelling need to move this particular case that particular week." According to Harrell, the fact that "her hired lawyer became unlicensed and did not refund her money, her court appointed counsel had previously represented the victim, and the Court gave her one hour on the day of trial to produce funds" "should be more than enough to constitute an abuse of discretion . . . ." However, the majority of the *Windham* factors clearly support the trial court's ruling.

First, Harrell's motion for continuance did not specify the length of the delay requested. In essence, she requested an open-ended continuance. Second, Ottaway had more than ten days to prepare for trial. Under the Texas Code of Criminal Procedure, "appointed counsel is entitled to 10 days to prepare for a proceeding . . . ."[2] TEX.CODE CRIM.PROC.ANN. art. 1.051(e)(West Supp. 2013). More importantly, there is no indication that Ottaway was not prepared to try the case. Indeed, from his performance at trial—questioning potential jurors, presenting and cross-examining witnesses on Harrell's behalf, lodging objections to evidence, and making opening and closing arguments—it is apparent Ottaway was prepared. Third, there is no evidence that another competent attorney was prepared to try the case. Though Moore testified that he had spoken to an attorney on Harrell's behalf, the fact is that the proposed new attorney was not yet retained and presumably, given that he had not been retained by trial, was not familiar enough with

---

[2] Harrell asserts that in actuality, Ottaway had only nine days to prepare for her trial because a trial judge was not available for a period of four days between the date Ottaway was appointed and the date trial commenced. According to Harrell, "a day without an appointed Judge is the equivalent to an actual day that should not be counted against . . . [her] for the minimum 10-day trial preparation afforded [her] under . . . Art. 1.051(e)[.]" Harrell, however, cites no authority—and we have found none—for this proposition. Moreover, the Texas Court of Criminal Appeals held in *Henson v. State*, 530 S.W.2d 584, 585 (Tex.Crim.App. 1975), that it is the actual preparation time that determines whether a defendant has been given the mandatory preparation time for trial provided by Article 1.051(e). Here, Ottaway was appointed on September 4, 2012 and trial commenced on September 17, 2012. Ottaway was thus afforded the ten days prescribed by Article 1.051(e).

5

Harrell's case to be prepared to try it. Fourth, the two-day proceeding was a serious matter, but does not appear from the record to be particularly complex. The first day was devoted to *voir dire* and the second to the trial on the merits, both guilt and punishment.[3] Fifth, the record does not indicate any particular prejudice to Harrell apart from the denial of her qualified right to retain chosen counsel.[4] In fact, Harrell has never identified any harm she suffered because of the denial of the continuance.[5] Finally, though Harrell complains that she should have been permitted to retain counsel of her choice, she does not contend Ottaway's representation was constitutionally infirm. Had she, the record would have belied her contention. The evidence against Harrell was overwhelming, but Ottaway did what he could to create doubt by insinuating that the charges against Harrell had been fabricated by Harrell's mother to gain custody of Harrell's children.

Conversely, one *Windham* factor clearly favors the granting of the requested continuance. The record does not indicate that Harrell had previously asked the trial court for a continuance. The remaining two *Windham* factors, however, do not tip the scales in favor of either party. At the hearing on the motion for continuance, no evidence was adduced or argument advanced concerning the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court. Nor is there any clear and obvious evidence in the record illuminating whether the

---

[3] Sentencing occurred the following day.

[4] Harrell complains that her Fifth Amendment right against self-incrimination was violated when she "had to take the stand at punishment to protect the record." However, nothing in the record indicates that Harrell had to testify at punishment to preserve her complaint on appeal that she was wrongly denied her right to retain counsel of her choice. Rather, the record reveals that: (1) Ottaway called Harrell to testify that she did not test positive for drugs and that she did not expose her children to methamphetamine; and (2) during cross-examination, Harrell explained that she was found guilty because she was not permitted to hire counsel of her choice.

[5] Harrell asserts she was not required to show harm because the denial of the right to be assisted by counsel of one's choice is a structural error not subject to a harm analysis. "A *complete* denial of the constitutional right to counsel at trial is a structural defect that affects the framework of the trial[]"and is not subject to a harm analysis. *Williams v. State*, 252 S.W.3d 353, 357 (Tex.Crim.App. 2008)[Emphasis added]. In *Williams*, the appellant pleaded guilty and "when she appeared for trial, she did not have counsel." *Id.* at 355. However, Harrell was provided with counsel before trial and represented by counsel during trial.

delay sought was for legitimate or contrived reasons. On the one hand, Harrell moved for a continuance before trial and alleged "conflict of interest" as the reason for continuance; on the other, Harrell has never explained why the perceived conflict warranted a continuance.[6]

In sum, although three of the *Windham* factors do not absolutely favor the granting of the requested continuance, under an abuse of discretion standard, it is not our role to reweigh the factors, but to determine whether the trial court could reasonably have balanced them to conclude that the facts weighed more heavily in favor of fair and efficient administration of justice than in favor of right to counsel of choice. *Greene*, 124 S.W.3d at 794. The trial court could certainly have balanced these factors, especially in light of the impending trial setting, and reasonable concluded that they weighed more heavily in support of the fair administration of justice. Accordingly, we hold that the trial court did not abuse its discretion in denying Harrell's motion for continuance to retain counsel of her choice. *See id.*

Harrell's issue is overruled.

---

[6] Rule 1.09 of the Texas Rules of Disciplinary Procedure provides:

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if the representation in reasonable probability will involve a violation of Rule 1.05; or . . . if it is the same or a substantially related matter.

TEX.DISCIPLINARY R.PROF'L CONDUCT 1.09(a), reprinted in TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A (West 2013)(TEX.STATE BAR R. art. X, § 9). Rule 1.05 of the Texas Rules of Disciplinary Procedure provides that, with certain exceptions not applicable here:

> [A] lawyer shall not knowingly . . . (2)[u]se confidential information of a client to the disadvantage of the client unless the client consents after consultation [or] (3)[u]se confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.

TEX.DISCIPLINARY R.PROF'L CONDUCT 1.05(b), reprinted in TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A (West 2013)(TEX.STATE BAR R. art. X, § 9).

Ottaway's former client was Harrell's adoptive father. Given this, Harrell has failed to explain how Ottaway's representation of her adoptive father in a civil case in which she was neither a party nor a witness disqualified Ottaway from representing her in a criminal matter in which the alleged victim was her mother.

## CONCLUSION

The trial court's judgment is affirmed.


March 26, 2014

                                       YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)