TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-05-00660-CR

NO. 03-05-00661-CR






John Edward Cantu, III, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT

NOS. A-04-1023-S & A-04-1024-S, HONORABLE BEN WOODWARD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 John Edward Cantu, III was convicted of the offenses of possession of marihuana,
see Tex. Health & Safety Code Ann. § 481.121 (West 2003), and possession of methamphetamine
with intent to deliver. Id. § 481.112. In three issues on appeal, Cantu asserts that (1) the district
court erred when it prevented Cantu from continuing to represent himself at trial; (2) the district
court erred in denying Cantu's motion for continuance; and (3) the evidence was legally and factually
insufficient to support his conviction for possession of methamphetamine. Cantu raises three
additional issues that his appellate counsel has reviewed and determined to be without merit. We
will affirm the judgment of the district court.

BACKGROUND


 The jury heard evidence that on April 9, 2004, Lieutenant Frank Carter of the San
Angelo Police Department was working off-duty security at an apartment complex in San Angelo. 
Carter came across Cantu's vehicle, and observed Cantu in the driver's seat of the vehicle,
motionless. The apartment complex had a curfew of 11:00 p.m., and it was approximately 12:30
a.m. when Carter discovered Cantu in his vehicle. Carter testified that he shined his flashlight
through the driver's-side window, looked inside, and observed a plastic bag with what appeared to
be a pipe located between Cantu's legs. Carter testified that he had seen similar pipes under
circumstances related to narcotics possession. Carter asked Cantu to exit the vehicle. Carter testified
that before Cantu opened the vehicle door, he "was leaning his body toward the center of the vehicle,
down underneath the driver's seat." Carter believed Cantu was trying to conceal something.

 Carter testified that when Cantu finally exited his vehicle, he observed a small glass
pipe drop out of the car. Cantu stepped on it and "crushed" it into the pavement. Carter testified that
as he began conversing with Cantu, Cantu began "putting distance" between himself and Carter.
Carter testified that he "felt like [Cantu] was going to flee" so he decided to detain Cantu with
handcuffs, but before he could so, Cantu "took off running on foot." Carter then began chasing him. 
Carter testified that Cantu was running in an "unusual" way, with his hands in front of him as if "he
was trying to take something from his person and discard it." Carter also testified that it was dark,
and he briefly lost sight of Cantu when Cantu ran around the corner of a building. Eventually during
the pursuit Cantu tripped and fell down, and Carter jumped on top of him and began wrestling with
him. Carter testified that Cantu was "actively resisting" arrest. After Cantu had been detained,
Carter discovered a plastic bag approximately ten feet away from where he had apprehended Cantu. 
Carter testified that the bag contained rubber gloves with a "yellowish rock-type substance" inside
of them that "had the appearance of methamphetamine." 

 Carter next searched Cantu's vehicle with the assistance of Sergeant David Howard. 
Carter testified that he searched the driver's side while Howard searched the passenger side. Carter
immediately discovered in the driver's seat a hand-held torch and three plastic gloves identical to
the gloves he had found in the plastic bag. Carter testified that hand-held torches are commonly used
to ignite a smoking pipe. Carter also testified to discovering underneath the driver's seat a "small
plastic bundle" that contained a "green leafy substance" that he recognized as marihuana. In the
driver's door panel, Carter discovered another small glass pipe that looked similar to the one he had
observed Cantu destroy with his foot. Carter testified that the pipe had "some burned residue" on
it. Carter continued his search and found in the center console area a cigar wrapping that "appeared
to contain marihuana."

 Sergeant Howard testified that the yellowish substance tested positive for
methamphetamine, and Bob Lee Wheeler, a chemist with the DPS Crime Lab in Midland, Texas,
testified that the methamphetamine weighed approximately 34 grams and that the marihuana
weighed approximately 7 ounces.

 In two separate cause numbers, Cantu was indicted for the offenses of possession of
marihuana and possession of methamphetamine with intent to deliver. The jury returned a verdict
of guilty and assessed punishment at forty years' confinement. This appeal followed.


DISCUSSION


Self-representation

 In his first issue, Cantu asserts that the district court erred in preventing him from
continuing to represent himself. Prior to trial, Cantu had been represented by attorney Fred Brigman.
Citing a conflict of interest and Cantu's desire to represent himself, Brigman filed a motion to
withdraw as Cantu's counsel, which the district court granted on May 11, 2005. On May 25, the
district court admonished Cantu regarding the risks of self-representation. On June 7, Cantu signed
an affidavit waiving his right to counsel but wrote, next to his signature, "But am asking for
assistance in counsel." Cantu explained in a pretrial hearing that he wanted an attorney to act as
"second seat assistance." The district court denied that request, explaining to Cantu that there was
no right to hybrid representation. However, the district court appointed attorney Kirk Hawkins to
serve as standby counsel. The district court also explained to Cantu the limited role of a standby
attorney. On June 10, after further consideration, the district court informed Cantu that it would
appoint Hawkins to represent him unless Cantu unambiguously waived his right to counsel. Cantu
re-signed the waiver of his right to counsel, this time without including the notation that he was
"asking for assistance in counsel." Hawkins remained on standby.

 Cantu represented himself throughout the jury selection process without incident. 
However, Cantu repeatedly disrupted the proceedings on the day testimony was scheduled to begin. 
First, before the State read the indictments, Cantu stated:


I am at this time, Your Honor, exercising my right to deny this Court's jurisdiction
under that war flag you fly right there with that gold banner around it. I wish -- I
demand you to make yourself transparent and to identify yourself to this Court.

The district court admonished Cantu to be quiet during the proceedings. After Cantu pleaded not
guilty to the first indictment, he again asked the judge to make himself "transparent to the Court." 

 After the State read the second indictment, Cantu was nonresponsive, and the district
court entered a plea of not guilty on behalf of Cantu, at which point Cantu stated, "On the
jurisdiction of this court that has not been shown to me in writing."

 As the State began its opening argument, Cantu objected, and the following exchange
occurred between Cantu and the district court:


Cantu: I, at this point, I'm going to soberly adjourn this Court and dismiss this
and deny this panel of jurors the jurisdiction to rule over me or to rule
over anything, because the prosecution has failed to produce jurisdiction,
refusing to become transparent....


The court: Okay. Mr. Cantu, you are out of order. I'm going to treat you with
respect as long as you treat us with respect, but let her finish ....


Cantu: Respect the flag behind you, the war flag. This is a war, Your Honor.


The court: The next time you interrupt me, I'm going to ask the Jury to step outside
until we take care of some other matters.



 Cantu continued to interrupt, so the district court excused the jury and allowed Cantu
to continue arguing. Cantu stated that he was dismissing himself and that if the district court
continued the proceedings without him, it would be denying him his Sixth Amendment right to
represent himself. The district court disagreed, and instructed Cantu that he must follow the rules
of the court or he would either be excluded from the courtroom or gagged. (1) Cantu asked the district
court, "Are you threatening me with violence, Mr. Woodward?" The district court replied that it
would instruct the bailiffs to gag him if necessary.

 When the jury was brought back into the courtroom, and the State resumed its
opening argument, Cantu continued to interrupt the prosecutor, standing up while making objections
on the basis of hearsay and lack of jurisdiction. The district court overruled the objections and
instructed the bailiffs to "have Mr. Cantu seated." At this point, Cantu became physically violent. 
The record reflects that Cantu repeatedly hit and kicked two bailiffs and three deputy sheriffs while
they tried to restrain him, and that this struggle continued for three to five minutes. The jury was
escorted out of the courtroom during the scuffle. After Cantu had been restrained, his mouth was
covered with duct tape. Cantu was also placed in a restraining chair. 

 Once the situation was under control, the district court informed Cantu that it was no
longer allowing him to represent himself, and that it was appointing Hawkins to represent him. The
duct tape was removed from Cantu's mouth, he was left in the restraining chair, the jury returned to
the courtroom, and the proceedings resumed. Cantu asserts that appointing Hawkins to represent
him violated his Sixth Amendment right to represent himself.

 The Sixth and Fourteenth Amendments to the United States Constitution guarantee
that a person brought to trial in any state or federal court may dispense with counsel and make his
own defense. Faretta v. California, 422 U.S. 806, 818-820 (1975); Moore v. State, 999 S.W.2d 385, 
395 (Tex. Crim. App. 1999); Johnson v. State, 894 S.W.2d 529, 533 (Tex. App.--Austin 1995, no
pet.). However, this right is not absolute. "[T]he trial judge may terminate self-representation by
a defendant who deliberately engages in serious and obstructionist misconduct." Faretta, 422 U.S.
at 834 n.46. We conclude that Cantu's behavior was serious and obstructionist misconduct that
justified the district court's decision to terminate Cantu's self-representation. "The right of
self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not
to comply with relevant rules of procedural and substantive law." Id.

 The Supreme Court has given trial courts guidance and discretion in dealing with
disruptive defendants such as Cantu:


We believe trial judges confronted with disruptive, contumacious, stubbornly defiant
defendants must be given sufficient discretion to meet the circumstances of each
case. No one formula for maintaining the appropriate courtroom atmosphere will be
best in all situations. We think there are at least three constitutionally permissible
ways for a trial judge to handle an obstreperous defendant []: (1) bind and gag him,
thereby keeping him present; (2) cite him for contempt; (3) take him out of the
courtroom until he promises to conduct himself properly.



Illinois v. Allen, 397 U.S. 337, 343-44 (1970).

 The district court chose to restrain Cantu, keep him present in the courtroom, and
appoint standby counsel to represent him. Based on the circumstances of this case, we do not believe
it was an abuse of discretion to do so. We overrule Cantu's first issue.


Motion for continuance

 In his second issue, Cantu asserts that the district court erred in denying his motion
for continuance. Cantu was indicted on September 9, 2004. The trial was first set for May 16, 2005. 
After Brigman withdrew as Cantu's counsel, the district court rescheduled the trial for June 20. On
June 15, Cantu filed a motion for continuance in which he stated that he had not had ample time to
prepare, review, and research his case. Noting the age of the case and the number of prior delays in
the case, the district court denied the motion. 

 Granting or denying a motion for a continuance of a trial is within the discretion of
the trial court. Wright v. State, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000). To establish an abuse
of the trial court's discretion, an appellant must show that the denial of his motion resulted in actual
prejudice. Id. In reviewing the circumstances of each case to determine whether to grant a
continuance, the trial court should weigh the following factors:


(1) the length of the delay requested, (2) whether other continuances were requested
and whether they were denied or granted, (3) the length of time in which the
accused's counsel had to prepare for trial, (4) whether another competent attorney
was prepared to try the case, (5) the balanced convenience or inconvenience to the
witnesses, the opposing counsel, and the trial court, (6) whether the delay is for
legitimate or contrived reasons, (7) whether the case was complex or simple, (8)
whether a denial of the motion resulted in some identifiable harm to the defendant,
(9) the quality of legal representation actually provided.



Ex parte Windham, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982); Greene v. State, 124 S.W.3d 789,
793-94 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd). An appellate court should not reweigh
the Windham factors, but rather only determine whether the trial court could have reasonably
concluded that the fair and efficient administration of justice weighed more heavily in favor of
denying the motion. Greene, 124 S.W.3d at 794.

 We conclude that the district court did not abuse its discretion in denying the
continuance. Cantu had already received one continuance when the court reset the trial date from
May 16 to June 20 once Cantu expressed his desire to represent himself. Furthermore, Cantu was
indicted on September 9, 2004, so he had over nine months to prepare his case, either by himself or
with the assistance of either his first attorney Fred Brigman--whom Cantu had retained--or his
standby attorney Kirk Hawkins. Additionally, this was not a complex case. Cantu was charged with
drug possession, and the State only called three witnesses, two of which were the arresting officers. 
The State also indicated to the district court that it was ready to proceed and would be
inconvenienced by further delays. 

 Cantu has also failed to make a showing of identifiable harm or actual prejudice. 
Once he expressed his desire to represent himself, Cantu was provided with a copy of the penal code,
the code of criminal procedure, and the rules of evidence. As a courtesy, the State provided relevant
case law to Cantu. The court also allowed Cantu access to the district court's law library for two
hours each on three separate occasions. Furthermore, once Hawkins was appointed to represent him,
Cantu was no longer at the disadvantage of representing himself. We overrule Cantu's second issue. 


Legal and factual sufficiency

 In his third issue, Cantu asserts that the evidence was insufficient to prove that he
possessed methamphetamine. Although Cantu does not specify whether he is challenging the legal
or factual sufficiency of the evidence, in the interest of justice we will address both.

 When there is a challenge to the legal sufficiency of the evidence to sustain a criminal
conviction, we consider whether a rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim.
App. 2005). We review all the evidence in the light most favorable to the verdict, assume that the
trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable
inferences in a manner that supports the verdict. See Griffin v. State, 614 S.W.2d 155, 159 (Tex.
Crim. App. 1981). It is not necessary that every fact point directly and independently to the
defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force
of all the incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App.
1993). We consider even erroneously admitted evidence. Id. The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given their testimony. Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in the evidence is within the
exclusive province of the jury. Id.

 In a factual sufficiency review, we view the evidence in a neutral light and will set
aside the verdict only if the supporting evidence is so weak that the verdict is clearly wrong or the
contrary evidence is so strong that the jury could not have found all the elements of the crime beyond
a reasonable doubt. Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A verdict is
clearly wrong and unjust if the "jury's finding is 'manifestly unjust,' 'shocks the conscience,' or
'clearly demonstrates bias.'" Id. (quoting Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997)). All the evidence is considered equally, including the testimony of defense witnesses and the
existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992,
no pet.). Although due deference must be accorded the fact-finder's determinations, particularly
those concerning the weight and credibility of the evidence, the reviewing court may disagree with
the result in order to prevent a manifest injustice. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim App.
2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of
guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a
reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); see Johnson,
23 S.W.3d at 11.

 To convict a defendant of drug possession, the State must prove that the defendant
exercised care, custody, control, or management over the drugs, and that he knew he possessed a
controlled substance. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); Martinets v.
State, 884 S.W.2d 185, 187 (Tex. App.--Austin 1994, no pet.). When the defendant is not in
exclusive possession or control of the place where the drugs are found, the State must affirmatively
link the defendant with the drugs. Brown, 911 S.W.2d at 747-48; Martinets, 884 S.W.2d at 187.
Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of
confidence, that the accused's connection with the drug was more than just fortuitous." Brown, 911
S.W.2d at 747. Circumstantial evidence often has equal or even greater probative value than direct
evidence. Goodman v. State, 66 S.W.3d 283, 296 (Tex. Crim. App. 2001). The affirmative links
need not be so strong as to exclude every other reasonable alternative hypothesis except the
defendant's guilt. Brown, 911 S.W.2d at 748.

 There are many factors that courts consider in determining whether the evidence is
sufficient to affirmatively link the accused with the controlled substance, including whether:


the contraband was in plain view or recovered from an enclosed place;


the accused was the owner of the premises or had the right to possess the place where
the contraband was found, or was the owner or driver of the automobile in which the
contraband was found;


the accused was found with a large amount of cash;

the contraband was conveniently accessible to the accused, or found on the same side
of the vehicle as the accused was sitting;


the contraband was found in close proximity to the accused;


a strong residual odor of the contraband was present;


the accused possessed other contraband when arrested;


paraphernalia to use the contraband was in view, or found on the accused;


the physical condition of the accused indicated recent consumption of the contraband
in question;


conduct by the accused indicated a consciousness of guilt;


the accused attempted to escape or flee;


the accused made furtive gestures;


the accused had a special connection to the contraband;


the occupants of the premises gave conflicting statements about relevant matters; 


the accused made incriminating statements connecting himself to the contraband;


the quantity of the contraband; and,

 

the accused was observed in a suspicious area under suspicious circumstances. 



Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex. App.--Corpus Christi 2002, no pet.) (citing Carvajal
v. State, 529 S.W.2d 517, 520 (Tex. Crim. App. 1975)); State v. Derrow, 981 S.W.2d 776, 779 (Tex.
App.--Houston [1st Dist.] 1998, pet. ref'd); Mohmed v. State, 977 S.W.2d 624, 627 (Tex.
App.--Fort Worth 1998, pet. ref'd); Cantu v. State, 944 S.W.2d 669, 670 (Tex. App.--Corpus
Christi 1997, pet. ref'd); Ortiz v. State, 930 S.W.2d 849, 853 (Tex. App.--Tyler 1996, no pet.);
Dixon v. State, 918 S.W.2d 678, 681 (Tex. App.--Beaumont 1996, no pet.); Washington v. State,
902 S.W.2d 649, 652 (Tex. App.--Houston [14th Dist] 1995, pet. ref'd); Watson v. State, 861
S.W.2d 410, 414-15 (Tex. App.--Beaumont 1993, pet. ref'd)). 

 Seldom will any single factor have logical force sufficient to sustain a conviction. 
Hall v. State, 86 S.W.3d 235, 240 (Tex. App.--Austin 2002, pet. ref'd). Instead, the required link
generally emerges from the logical force that several factors may have in combination. Id. In
deciding whether the evidence sufficiently establishes an affirmative link between the accused and
the contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the
weight to be given to their testimony. Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App.
2005). Ultimately, the question of whether the evidence is sufficient to affirmatively link the
accused to the contraband must be answered on a case-by-case basis. Whitworth v. State, 808
S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd).

 The following evidence suggests that Cantu was in possession of the
methamphetamine:


Cantu attempted to flee from Officer Carter;


Drug paraphernalia was found in Cantu's vehicle that Officer Carter testified was
associated with smoking methamphetamine, namely smoking pipes and hand-held
torches;


Other contraband, namely marihuana, was found in Cantu's vehicle;


When Officer Carter asked Cantu to exit the vehicle, Cantu appeared as if he was
trying to conceal something and, when Cantu exited the vehicle, he stepped on and
crushed the glass pipe that Officer Carter testified was used to smoke
methamphetamine.



 The only evidence that suggests Cantu did not possess the methamphetamine is that
the bag containing the methamphetamine was found not on Cantu's person but on the ground
approximately ten feet away from where he was apprehended. Although Officer Carter testified that
he did not see Cantu throw anything during the foot chase, a rational jury could infer that because
it was dark and Carter briefly lost sight of Cantu as he ran around the corner of a building, Cantu
discarded the methamphetamine without Carter being aware of it. The jury also heard Carter testify
that Cantu was running in an "unusual" way, with his hands in front of him as if "he was trying to
take something from his person and discard it." 

 Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found beyond a reasonable doubt that Cantu possessed the
methamphetamine. See Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We reach the
same conclusion when considering all the evidence in a neutral light. We do not believe the proof
of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a
reasonable doubt. Zuniga, 144 S.W.3d at 484-85. The evidence is thus legally and factually
sufficient to support Cantu's conviction. We overrule Cantu's third issue. 


Additional issues on appeal

 Cantu has raised the following additional issues: (1) the district court erred in denying
his motion for a competency examination; (2) there was a fatal defect in the chain of custody of the
controlled substances admitted as evidence against him; and (3) the controlled substances were
illegally seized in violation of the United States and Texas constitutions. 

 These additional issues have been thoroughly briefed by Cantu's appellate counsel
and he submits that they are without merit. The State has thoroughly briefed these issues as well,
and likewise concludes that these issues are without merit. We have reviewed the record, the
applicable law, and the briefs of both parties. (2) We also conclude that the additional issues are
without merit, and overrule each of them. 


CONCLUSION


 Having overruled Cantu's issues on appeal, we affirm the judgment of the district
court.



 

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: July 28, 2006

Do Not Publish

1. The Supreme Court has ruled that, in certain situations, it is permissible for a trial court to
gag a disruptive defendant. See Illinois v. Allen, 397 U.S. 337, 343-44 (1970).
2. Cantu has not filed a pro se brief.