# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00660-CR
## NO. 03-05-00661-CR

**John Edward Cantu, III, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
NOS. A-04-1023-S & A-04-1024-S, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

John Edward Cantu, III was convicted of the offenses of possession of marihuana, *see* Tex. Health & Safety Code Ann. § 481.121 (West 2003), and possession of methamphetamine with intent to deliver. *Id*. § 481.112. In three issues on appeal, Cantu asserts that (1) the district court erred when it prevented Cantu from continuing to represent himself at trial; (2) the district court erred in denying Cantu's motion for continuance; and (3) the evidence was legally and factually insufficient to support his conviction for possession of methamphetamine. Cantu raises three additional issues that his appellate counsel has reviewed and determined to be without merit. We will affirm the judgment of the district court.

## BACKGROUND

The jury heard evidence that on April 9, 2004, Lieutenant Frank Carter of the San Angelo Police Department was working off-duty security at an apartment complex in San Angelo. Carter came across Cantu's vehicle, and observed Cantu in the driver's seat of the vehicle, motionless. The apartment complex had a curfew of 11:00 p.m., and it was approximately 12:30 a.m. when Carter discovered Cantu in his vehicle. Carter testified that he shined his flashlight through the driver's-side window, looked inside, and observed a plastic bag with what appeared to be a pipe located between Cantu's legs. Carter testified that he had seen similar pipes under circumstances related to narcotics possession. Carter asked Cantu to exit the vehicle. Carter testified that before Cantu opened the vehicle door, he "was leaning his body toward the center of the vehicle, down underneath the driver's seat." Carter believed Cantu was trying to conceal something.

Carter testified that when Cantu finally exited his vehicle, he observed a small glass pipe drop out of the car. Cantu stepped on it and "crushed" it into the pavement. Carter testified that as he began conversing with Cantu, Cantu began "putting distance" between himself and Carter. Carter testified that he "felt like [Cantu] was going to flee" so he decided to detain Cantu with handcuffs, but before he could so, Cantu "took off running on foot." Carter then began chasing him. Carter testified that Cantu was running in an "unusual" way, with his hands in front of him as if "he was trying to take something from his person and discard it." Carter also testified that it was dark, and he briefly lost sight of Cantu when Cantu ran around the corner of a building. Eventually during the pursuit Cantu tripped and fell down, and Carter jumped on top of him and began wrestling with him. Carter testified that Cantu was "actively resisting" arrest. After Cantu had been detained,

2

Carter discovered a plastic bag approximately ten feet away from where he had apprehended Cantu. Carter testified that the bag contained rubber gloves with a "yellowish rock-type substance" inside of them that "had the appearance of methamphetamine."

Carter next searched Cantu's vehicle with the assistance of Sergeant David Howard. Carter testified that he searched the driver's side while Howard searched the passenger side. Carter immediately discovered in the driver's seat a hand-held torch and three plastic gloves identical to the gloves he had found in the plastic bag. Carter testified that hand-held torches are commonly used to ignite a smoking pipe. Carter also testified to discovering underneath the driver's seat a "small plastic bundle" that contained a "green leafy substance" that he recognized as marihuana. In the driver's door panel, Carter discovered another small glass pipe that looked similar to the one he had observed Cantu destroy with his foot. Carter testified that the pipe had "some burned residue" on it. Carter continued his search and found in the center console area a cigar wrapping that "appeared to contain marihuana."

Sergeant Howard testified that the yellowish substance tested positive for methamphetamine, and Bob Lee Wheeler, a chemist with the DPS Crime Lab in Midland, Texas, testified that the methamphetamine weighed approximately 34 grams and that the marihuana weighed approximately 7 ounces.

In two separate cause numbers, Cantu was indicted for the offenses of possession of marihuana and possession of methamphetamine with intent to deliver. The jury returned a verdict of guilty and assessed punishment at forty years' confinement. This appeal followed.

3

**DISCUSSION**

**Self-representation**

In his first issue, Cantu asserts that the district court erred in preventing him from continuing to represent himself. Prior to trial, Cantu had been represented by attorney Fred Brigman. Citing a conflict of interest and Cantu's desire to represent himself, Brigman filed a motion to withdraw as Cantu's counsel, which the district court granted on May 11, 2005. On May 25, the district court admonished Cantu regarding the risks of self-representation. On June 7, Cantu signed an affidavit waiving his right to counsel but wrote, next to his signature, "But am asking for assistance in counsel." Cantu explained in a pretrial hearing that he wanted an attorney to act as "second seat assistance." The district court denied that request, explaining to Cantu that there was no right to hybrid representation. However, the district court appointed attorney Kirk Hawkins to serve as standby counsel. The district court also explained to Cantu the limited role of a standby attorney. On June 10, after further consideration, the district court informed Cantu that it would appoint Hawkins to represent him unless Cantu unambiguously waived his right to counsel. Cantu re-signed the waiver of his right to counsel, this time without including the notation that he was "asking for assistance in counsel." Hawkins remained on standby.

Cantu represented himself throughout the jury selection process without incident. However, Cantu repeatedly disrupted the proceedings on the day testimony was scheduled to begin. First, before the State read the indictments, Cantu stated:

> I am at this time, Your Honor, exercising my right to deny this Court's jurisdiction under that war flag you fly right there with that gold banner around it. I wish — I demand you to make yourself transparent and to identify yourself to this Court.

4

The district court admonished Cantu to be quiet during the proceedings. After Cantu pleaded not guilty to the first indictment, he again asked the judge to make himself "transparent to the Court."

After the State read the second indictment, Cantu was nonresponsive, and the district court entered a plea of not guilty on behalf of Cantu, at which point Cantu stated, "On the jurisdiction of this court that has not been shown to me in writing."

As the State began its opening argument, Cantu objected, and the following exchange occurred between Cantu and the district court:

Cantu:    I, at this point, I'm going to soberly adjourn this Court and dismiss this and deny this panel of jurors the jurisdiction to rule over me or to rule over anything, because the prosecution has failed to produce jurisdiction, refusing to become transparent....

The court: Okay. Mr. Cantu, you are out of order. I'm going to treat you with respect as long as you treat us with respect, but let her finish ....

Cantu:    Respect the flag behind you, the war flag. This is a war, Your Honor.

The court: The next time you interrupt me, I'm going to ask the Jury to step outside until we take care of some other matters.

Cantu continued to interrupt, so the district court excused the jury and allowed Cantu to continue arguing. Cantu stated that he was dismissing himself and that if the district court continued the proceedings without him, it would be denying him his Sixth Amendment right to represent himself. The district court disagreed, and instructed Cantu that he must follow the rules of the court or he would either be excluded from the courtroom or gagged.[1] Cantu asked the district

---

[1] The Supreme Court has ruled that, in certain situations, it is permissible for a trial court to gag a disruptive defendant. *See Illinois v. Allen*, 397 U.S. 337, 343-44 (1970).

court, "Are you threatening me with violence, Mr. Woodward?" The district court replied that it would instruct the bailiffs to gag him if necessary.

When the jury was brought back into the courtroom, and the State resumed its opening argument, Cantu continued to interrupt the prosecutor, standing up while making objections on the basis of hearsay and lack of jurisdiction. The district court overruled the objections and instructed the bailiffs to "have Mr. Cantu seated." At this point, Cantu became physically violent. The record reflects that Cantu repeatedly hit and kicked two bailiffs and three deputy sheriffs while they tried to restrain him, and that this struggle continued for three to five minutes. The jury was escorted out of the courtroom during the scuffle. After Cantu had been restrained, his mouth was covered with duct tape. Cantu was also placed in a restraining chair.

Once the situation was under control, the district court informed Cantu that it was no longer allowing him to represent himself, and that it was appointing Hawkins to represent him. The duct tape was removed from Cantu's mouth, he was left in the restraining chair, the jury returned to the courtroom, and the proceedings resumed. Cantu asserts that appointing Hawkins to represent him violated his Sixth Amendment right to represent himself.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person brought to trial in any state or federal court may dispense with counsel and make his own defense. *Faretta v. California,* 422 U.S. 806, 818-820 (1975); *Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999); *Johnson v. State*, 894 S.W.2d 529, 533 (Tex. App.—Austin 1995, no pet.). However, this right is not absolute. "[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S.

6

at 834 n.46. We conclude that Cantu's behavior was serious and obstructionist misconduct that justified the district court's decision to terminate Cantu's self-representation. "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Id.*

The Supreme Court has given trial courts guidance and discretion in dealing with disruptive defendants such as Cantu:

> We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant []: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

*Illinois v. Allen*, 397 U.S. 337, 343-44 (1970).

The district court chose to restrain Cantu, keep him present in the courtroom, and appoint standby counsel to represent him. Based on the circumstances of this case, we do not believe it was an abuse of discretion to do so. We overrule Cantu's first issue.

**Motion for continuance**

In his second issue, Cantu asserts that the district court erred in denying his motion for continuance. Cantu was indicted on September 9, 2004. The trial was first set for May 16, 2005. After Brigman withdrew as Cantu's counsel, the district court rescheduled the trial for June 20. On June 15, Cantu filed a motion for continuance in which he stated that he had not had ample time to

7

prepare, review, and research his case. Noting the age of the case and the number of prior delays in the case, the district court denied the motion.

Granting or denying a motion for a continuance of a trial is within the discretion of the trial court. *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000). To establish an abuse of the trial court's discretion, an appellant must show that the denial of his motion resulted in actual prejudice. *Id*. In reviewing the circumstances of each case to determine whether to grant a continuance, the trial court should weigh the following factors:

> (1) the length of the delay requested, (2) whether other continuances were requested and whether they were denied or granted, (3) the length of time in which the accused's counsel had to prepare for trial, (4) whether another competent attorney was prepared to try the case, (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court, (6) whether the delay is for legitimate or contrived reasons, (7) whether the case was complex or simple, (8) whether a denial of the motion resulted in some identifiable harm to the defendant, (9) the quality of legal representation actually provided.

*Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982); *Greene v. State*, 124 S.W.3d 789, 793-94 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). An appellate court should not reweigh the *Windham* factors, but rather only determine whether the trial court could have reasonably concluded that the fair and efficient administration of justice weighed more heavily in favor of denying the motion. *Greene*, 124 S.W.3d at 794.

We conclude that the district court did not abuse its discretion in denying the continuance. Cantu had already received one continuance when the court reset the trial date from May 16 to June 20 once Cantu expressed his desire to represent himself. Furthermore, Cantu was indicted on September 9, 2004, so he had over nine months to prepare his case, either by himself or

with the assistance of either his first attorney Fred Brigman—whom Cantu had retained—or his standby attorney Kirk Hawkins. Additionally, this was not a complex case. Cantu was charged with drug possession, and the State only called three witnesses, two of which were the arresting officers. The State also indicated to the district court that it was ready to proceed and would be inconvenienced by further delays.

Cantu has also failed to make a showing of identifiable harm or actual prejudice. Once he expressed his desire to represent himself, Cantu was provided with a copy of the penal code, the code of criminal procedure, and the rules of evidence. As a courtesy, the State provided relevant case law to Cantu. The court also allowed Cantu access to the district court's law library for two hours each on three separate occasions. Furthermore, once Hawkins was appointed to represent him, Cantu was no longer at the disadvantage of representing himself. We overrule Cantu's second issue.

**Legal and factual sufficiency**

In his third issue, Cantu asserts that the evidence was insufficient to prove that he possessed methamphetamine. Although Cantu does not specify whether he is challenging the legal or factual sufficiency of the evidence, in the interest of justice we will address both.

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict, assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex.

9

Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id*. The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Id*.

In a factual sufficiency review, we view the evidence in a neutral light and will set aside the verdict only if the supporting evidence is so weak that the verdict is clearly wrong or the contrary evidence is so strong that the jury could not have found all the elements of the crime beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A verdict is clearly wrong and unjust if the "jury's finding is 'manifestly unjust,' 'shocks the conscience,' or 'clearly demonstrates bias.'" *Id*. (quoting *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)). All the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a

10

reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); *see Johnson*, 23 S.W.3d at 11.

To convict a defendant of drug possession, the State must prove that the defendant exercised care, custody, control, or management over the drugs, and that he knew he possessed a controlled substance. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Martinets v. State*, 884 S.W.2d 185, 187 (Tex. App.—Austin 1994, no pet.). When the defendant is not in exclusive possession or control of the place where the drugs are found, the State must affirmatively link the defendant with the drugs. *Brown*, 911 S.W.2d at 747-48; *Martinets*, 884 S.W.2d at 187. Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown*, 911 S.W.2d at 747. Circumstantial evidence often has equal or even greater probative value than direct evidence. *Goodman v. State*, 66 S.W.3d 283, 296 (Tex. Crim. App. 2001). The affirmative links need not be so strong as to exclude every other reasonable alternative hypothesis except the defendant's guilt. *Brown*, 911 S.W.2d at 748.

There are many factors that courts consider in determining whether the evidence is sufficient to affirmatively link the accused with the controlled substance, including whether:

the contraband was in plain view or recovered from an enclosed place;

the accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner or driver of the automobile in which the contraband was found;

the accused was found with a large amount of cash;

11

the contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting;

the contraband was found in close proximity to the accused;

a strong residual odor of the contraband was present;

the accused possessed other contraband when arrested;

paraphernalia to use the contraband was in view, or found on the accused;

the physical condition of the accused indicated recent consumption of the contraband in question;

conduct by the accused indicated a consciousness of guilt;

the accused attempted to escape or flee;

the accused made furtive gestures;

the accused had a special connection to the contraband;

the occupants of the premises gave conflicting statements about relevant matters;

the accused made incriminating statements connecting himself to the contraband;

the quantity of the contraband; and,

the accused was observed in a suspicious area under suspicious circumstances.

*Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.) (citing *Carvajal v. State*, 529 S.W.2d 517, 520 (Tex. Crim. App. 1975)); *State v. Derrow*, 981 S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *Mohmed v. State*, 977 S.W.2d 624, 627 (Tex. App.—Fort Worth 1998, pet. ref'd); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex. App.—Corpus Christi 1997, pet. ref'd); *Ortiz v. State*, 930 S.W.2d 849, 853 (Tex. App.—Tyler 1996, no pet.); *Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.—Beaumont 1996, no pet.); *Washington v. State*,

902 S.W.2d 649, 652 (Tex. App.—Houston [14th Dist] 1995, pet. ref'd); *Watson v. State*, 861 S.W.2d 410, 414-15 (Tex. App.—Beaumont 1993, pet. ref'd)).

Seldom will any single factor have logical force sufficient to sustain a conviction. *Hall v. State*, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd). Instead, the required link generally emerges from the logical force that several factors may have in combination. *Id*. In deciding whether the evidence sufficiently establishes an affirmative link between the accused and the contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case-by-case basis. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

The following evidence suggests that Cantu was in possession of the methamphetamine:

Cantu attempted to flee from Officer Carter;

Drug paraphernalia was found in Cantu's vehicle that Officer Carter testified was associated with smoking methamphetamine, namely smoking pipes and hand-held torches;

Other contraband, namely marihuana, was found in Cantu's vehicle;

When Officer Carter asked Cantu to exit the vehicle, Cantu appeared as if he was trying to conceal something and, when Cantu exited the vehicle, he stepped on and crushed the glass pipe that Officer Carter testified was used to smoke methamphetamine.

The only evidence that suggests Cantu did not possess the methamphetamine is that the bag containing the methamphetamine was found not on Cantu's person but on the ground approximately ten feet away from where he was apprehended. Although Officer Carter testified that he did not see Cantu throw anything during the foot chase, a rational jury could infer that because it was dark and Carter briefly lost sight of Cantu as he ran around the corner of a building, Cantu discarded the methamphetamine without Carter being aware of it. The jury also heard Carter testify that Cantu was running in an "unusual" way, with his hands in front of him as if "he was trying to take something from his person and discard it."

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Cantu possessed the methamphetamine. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We reach the same conclusion when considering all the evidence in a neutral light. We do not believe the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85. The evidence is thus legally and factually sufficient to support Cantu's conviction. We overrule Cantu's third issue.

**Additional issues on appeal**

Cantu has raised the following additional issues: (1) the district court erred in denying his motion for a competency examination; (2) there was a fatal defect in the chain of custody of the controlled substances admitted as evidence against him; and (3) the controlled substances were illegally seized in violation of the United States and Texas constitutions.

14

These additional issues have been thoroughly briefed by Cantu's appellate counsel and he submits that they are without merit. The State has thoroughly briefed these issues as well, and likewise concludes that these issues are without merit. We have reviewed the record, the applicable law, and the briefs of both parties.[2] We also conclude that the additional issues are without merit, and overrule each of them.

## CONCLUSION

Having overruled Cantu's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   July 28, 2006

Do Not Publish

---

[2] Cantu has not filed a pro se brief.