**Opinion issued September 16, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00139-CR

————————————

**WILLIAM HOSEA ENGLISH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 119th District Court[1]**
**Tom Green County, Texas**
**Trial Court Case No. B-17-0829-SA**

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Third District of Texas to this Court. *See* Tex. Gov't Code § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* Tex. R. App. P. 41.3.

**MEMORANDUM OPINION**

A jury convicted William Hosea English of aggravated robbery. TEX. PENAL CODE § 29.03. English pleaded true to two enhancements, and the trial court sentenced him to 35 years' imprisonment. On appeal, he argues that the evidence is insufficient to support his conviction, that he received ineffective assistance of counsel, and that the trial court erred in denying his *Batson* challenge. We affirm.

**Background**

In the early morning hours of April 20, 2017, a man walked into a convenience store, pointed a gun at the store clerk, and demanded the cash from the register. The man had a plastic bag covering his face during the robbery. The clerk gave the man $46 from the register. Once the man left the store, the clerk called 911. The San Angelo Police Department responded a few minutes later.

Upon arrival at the store, several officers viewed surveillance video of the incident. A few hours later, one of the officers saw English at a car wash a few miles away. The officer believed that English looked like the man robbing the store in the surveillance video. When initially approached, English gave officers an incorrect name and birth date. Once they ascertained his identity, the officers realized that English had a parole warrant, and he was arrested. On the roof of a business adjacent to the car wash, law enforcement found a blue polo-style shirt they believed English

2

wore during the robbery. English was interviewed at the jail, and his clothing and shoes were seized. He was later charged with aggravated robbery.

At trial, Dale Holcomb, the convenience store clerk, testified that a man with a plastic bag covering his face came into the store, pointed a gun at him, and demanded money. He gave the man the contents of the cash drawer, which was about $46. He also stated that the robber was about 5'10" and was wearing a dark shirt. He could not determine the style of shirt because the plastic bag around the man's head impeded his view.

The store manager testified about arriving at the store after the robbery to review surveillance video footage. During his testimony, the jury viewed surveillance videos with audio showing the robbery suspect walking into the convenience store, robbing the store clerk, and leaving. The jury also viewed surveillance video from earlier in the day that appeared to show the same suspect, without his face covered, browsing a beverage aisle.

Officer M. Rodriguez testified that he responded to the convenience store dispatch call. When he arrived, another officer was inside talking to Holcomb. Officer Rodriguez watched surveillance video of the incident. Later, he got a call that another officer had located a potential suspect at a nearby car wash. He went to the car wash and observed that while the suspect in the robbery was wearing a blue polo-style shirt, the suspect at the car wash was wearing a grey t-shirt. As other

officers dealt with the suspect, Officer Rodriguez returned to the convenience store and watched video from hours before the robbery showing the robber in the beverage aisle of the store. He recognized the man in the video as the same person at the car wash. He testified that the individual was wearing the same shoes. He identified English in court as the man in the video and the man arrested at the car wash.

Sergeant A. Callum responded to the robbery call in a supervisory capacity. After watching the surveillance video, he patrolled the area around the convenience store. In his experience, convenience store robberies happen in clusters, so he checked on nearby stores while looking for a potential suspect. About two hours later, he saw a man at a car wash that looked identical to the man in the surveillance video, except the man at the car wash was not wearing a face covering. He radioed for back up and detained English. At first, English gave Sergeant Callum a fake name and date of birth. Using the computer database, Sergeant Callum identified English and arrested him for an outstanding warrant. English had his state issued identification card and birth certificate in his pocket, but he never admitted to giving law enforcement a fake name.

Officer T. Gonzales testified that he responded to the car wash when he heard that Sergeant Callum was there with a possible suspect. Officer Gonzales helped determine English's true name. During his testimony, the State introduced and the court admitted several photographs into evidence. Officer Gonzales explained that

the photographs, taken at the county jail, showed English in the clothes he was wearing when arrested: a grey t-shirt with a logo on the front and blue jeans. Officer Gonzales also explained that a photo of a left shoe was the shoe that English was wearing when arrested.

Detective R. Cercone responded to the robbery at the convenience store, viewed the surveillance videos, and then continued back into service. A few hours later, he and another officer drove to the car wash where Sgt. Callum had detained a suspect. The suspect was wearing a grey undershirt, unlike the suspect in the surveillance video, who was wearing a blue collared shirt.

Detective Cercone and the other officer remained at the car wash to look for the gun used in the robbery while English was transported to jail. They checked the roof of an adjacent laundromat. About five feet onto the roof, they found a blue shirt. Detective Cercone testified that the shirt had been recently put on the roof because everything else on the roof was covered in dust, but the shirt was not. The jury viewed a photograph of the shirt where it was found on the roof. They also viewed photographs of the shirt after it was seized by the officers.

Detective K. Reeves testified that she first spoke with English at the jail. English told her that the car he was driving when stopped at the car wash belonged to his brother. In an effort to establish English's alibi, Detective Reeves asked English where he had been during the day of the robbery. English told Detective

5

Reeves that on the day in question, he met his brother for lunch. His brother also gave him the car that English drove for the rest of the day. He denied going to the convenience store. Initially, English told Detective Reeves that he had been to a different location of the same store, but Detective Reeves was unable to verify the statement. She checked the other locations' surveillance video and receipts for purchases, but neither confirmed that English had been in the store. Aside from these details, English did not provide specifics of what he did or where he was. At the end of the second interview, Detective Reeves seized the pants and shoes that English was wearing when arrested.

The jury found English guilty of aggravated robbery. English pleaded true to two enhancements, and the trial court sentenced him to 35 years' imprisonment.

### Sufficiency of the Evidence

In his first issue, English contends that the evidence was insufficient to support his conviction for aggravated robbery. We disagree.

### A. Standard of Review

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–20 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under the *Jackson* standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was

6

proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). If an appellate court finds the evidence insufficient, it must reverse the judgment and enter an order of acquittal. *Estrella v. State*, 546 S.W.3d 789, 797 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. Jurors may choose to believe or disbelieve any part of a witness's testimony. *Gonzalez v. State*, 522 S.W.3d 48, 56 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We resolve inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see Clayton*, 235 S.W.3d at 778 ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*,

7

235 S.W.3d at 778. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. TEX. PENAL CODE § 29.03. A deadly weapon is defined, in relevant part, as "a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." *Id.* at § 1.07(17)(A). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, the person intentionally, knowingly, or recklessly (1) causes bodily injury to another; or (2) threatens or places another in fear of imminent bodily injury or death. *Id.* at § 29.02(a). A person commits theft if he appropriates property without the owner's consent and with intent to deprive the owner of the property. *Id.* at § 31.03(a), (b)(1). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of theft." *Id.* at § 29.01(1).

## B.    Analysis

English does not dispute that the prosecution produced legally sufficient evidence to prove that an aggravated robbery occurred. He disputes whether the State proved that he was the person who committed the aggravated robbery. We

8

accordingly limit our sufficiency review to just the essential element of identity. *See* TEX. R. APP. P. 47.1 (providing that court of appeals issues a written opinion that is "as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal"); *Burks v. State*, No. PD-0992-15, 2017 WL 3443982 (Tex. Crim. App. June 28, 2017) (per curiam) (op. on reh'g) (not designated for publication) (holding that reviewing court should not address unbriefed elements in a sufficiency challenge because an analysis of those elements is not necessary to final disposition of the appeal).

The identity of the person committing the offense is an element of the crime that must be proved. *See Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (noting defendant's identity can be proved by direct or circumstantial evidence and that eyewitness identification is not necessary). We review the totality of the circumstances to determine whether there is sufficient evidence that a defendant is the individual who committed the offense. *See Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. 1981). Identity may be proven by direct or circumstantial evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *see also Ford v. State*, 852 S.W.2d 641, 642 (Tex. App.—Houston [14th Dist.] 1993, no pet.).

The record contains sufficient circumstantial evidence from which the jury could have found that English committed the crime. The jury viewed surveillance

videos of the robbery, recorded by the convenience store's cameras. In the videos, a man with a plastic bag around his face demanded cash from the register. The jury also viewed a surveillance video from earlier during the day, showing the same man in an aisle of the convenience store.

Both Sergeant Callum and Officer Rodriguez identified English as the person in the surveillance videos. Sergeant Callum testified that he first saw English about an hour and a half after the robbery. He had viewed the surveillance video, and he believed that English looked like the person in the video. When detained, English gave Sergeant Callum a false name and date of birth. Officer Rodriguez saw the video surveillance clips from the robbery and testified that from the video, the perpetrator is an African-American man wearing a blue polo-style shirt, jeans, and black or grey shoes. He testified that the individual had short hair. Officer Rodriguez first saw English when Sergeant Callum detained him at the car wash. He later saw the surveillance video of the suspect in the convenience store before the robbery. He identified the person in the video as the same person that Sergeant Callum detained at the car wash. Specifically, he testified "I remember looking at his shoes in the video, and they were the same shoes that Mr. English was wearing at the [car wash]."

The jury viewed photographs of English taken at the jail by Officer Gonzales. In the photographs, English is wearing the clothing that he had been arrested in,

except for his shoes, which had been replaced with shoes provided by the jail. Officer Gonzales took a photograph of the shoe that English wore at the time of his arrest.

The jury heard Detective Cercone's testimony that a blue polo-style shirt was found on the roof of a convenience store adjacent to the car wash. Based on the absence of dust on the shirt, Detective Cercone believed it had recently been placed on the roof. The suspect in the surveillance video was wearing a similar blue shirt.

Finally, the jury heard from Detective Reeves who interviewed English in the jail. Detective Reeves testified that she was unable to establish an alibi for English and that English was unable to provide her with specific details of his whereabouts during the time of the robbery.

English argues that the evidence is insufficient to establish his identity because Holcomb did not identify him as the person who robbed the store. He also complains that there were discrepancies in the witnesses' description of the robbery suspect. Eyewitness identification is not required for a conviction. *Green v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (eyewitness identification not necessary to identify perpetrator). To the extent that inconsistencies existed, the jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony, and reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Wyatt v. State*, 23 S.W.3d 18,

30 (Tex. Crim. App. 2000). The jury may choose to believe some testimony and disbelieve other testimony. *Id.*

English also complains that the evidence is insufficient due to a lack of physical evidence. Specifically, he argues that neither the weapon nor the currency stolen from the store were recovered from him and that there was no DNA evidence linking him to the shirt found on the rooftop. The lack of physical evidence does not render the evidence supporting a conviction insufficient. *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). "A rational jury could have found appellant guilty of aggravated robbery without DNA evidence, fingerprint evidence, or evidence of the gun or cash . . . ." *Id.*; *see also Santos v. State*, 116 S.W.3d 447, 459 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (rejecting argument that lack of fingerprints connecting appellant to robbery rendered evidence insufficient to support conviction). The lack of eyewitness testimony and physical evidence were factors for the jury to consider in weighing the evidence, and we defer to the jury's resolution of these issues. *See McGregor v. State*, 394 S.W.3d 90, 110 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support the jury's verdict. We overrule English's first issue.

12

**Batson Challenge**

In his second issue, English argues that the State impermissibly used a peremptory strike against a prospective juror on the basis of that juror's race, and the trial court abused its discretion by denying English's challenge to the strike made pursuant to *Batson v. Kentucky*.

## A.    Standard of Review and Applicable Law

In *Batson v. Kentucky*, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from exercising peremptory strikes solely on the basis of the potential juror's race. 476 U.S. 79, 89 (1986); *see Nieto v. State*, 365 S.W.3d 673, 675 (Tex. Crim. App. 2012); *see also* TEX. CODE CRIM. PROC. art. 35.261 (codifying *Batson*). "In the eyes of the Constitution, one racially discriminatory peremptory strike is one too many." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2241 (2019).

The Supreme Court has established a three-step process for trial courts to use in determining claims that a peremptory strike was based on race. *Snyder v. Louisiana*, 552 U.S. 472, 476 (2008). First, a defendant must make a prima facie showing that the State has exercised a peremptory challenge on the basis of race. *Id.* If the defendant makes that showing, the State must offer a race-neutral basis for striking the prospective juror. *Id.* at 476–77. The State "need only tender an explanation that is racially neutral on its face." *Blackman v. State*, 414 S.W.3d 757,

764–65 (Tex. Crim. App. 2013). This step "does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995) (per curiam). At this step, the issue is the "facial validity of the prosecutor's explanation," and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* at 768 (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality op.)). "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror." *Hernandez*, 500 U.S. at 360 (plurality op.).

Finally, the trial court must determine whether the defendant has established purposeful discrimination. *Snyder*, 552 U.S. at 477; *Batson*, 476 U.S. at 96–97 (stating that in determining whether defendant has made required showing, trial court "should consider all relevant circumstances"); *Blackman*, 414 S.W.3d at 765 (stating that opponent of strike bears burden to establish that strike was product of purposeful discrimination by preponderance of evidence). At this step of the analysis, the trial court considers the ultimate plausibility of the State's explanation. *Blackman*, 414 S.W.3d at 765. The trial court must determine whether the stated reasons for the strike "were the actual reasons or instead were a pretext for discrimination." *Flowers*, 139 S. Ct. at 2241. The trial court must focus on the genuineness of the asserted non-racial motive rather than on its reasonableness. *Nieto*, 365 S.W.3d at 676.

14

"Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pretextual, not genuine, is a question of fact for the trial court to resolve in the first instance." *Blackman*, 414 S.W.3d at 765; *see Miller-El v. Dretke*, 545 U.S. 231, 251–52 (2005) (stating that *Batson* procedure "provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it"); *Hernandez*, 500 U.S. at 367 (plurality op.) ("Whether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a question of historical fact."). The ultimate inquiry is whether the State was "motivated in substantial part by discriminatory intent." *Flowers*, 139 S. Ct. at 2244 (quoting *Foster v. Chatman*, 136 S. Ct. 1737, 1754 (2016)).

The trial court's ruling in the third step of the *Batson* inquiry must be sustained unless it is clearly erroneous. *Snyder*, 552 U.S. at 477; *Hernandez*, 500 U.S. at 369 (plurality op.). This step involves an evaluation of the prosecutor's credibility, and the best evidence of discriminatory intent "often will be the demeanor of the attorney who exercises the challenge." *Snyder*, 552 U.S. at 477 (quoting *Hernandez*, 500 U.S. at 365 (plurality op.)). Determinations of credibility and demeanor "lie peculiarly within a trial judge's province," and in the absence of exceptional circumstances, we

15

defer to the trial court. *Snyder*, 522 U.S. at 477 (internal quotations omitted); *see Flowers*, 139 S. Ct. at 2244.

When determining whether the trial court's ruling is clearly erroneous, we consider the entire voir dire record, and we "need not limit [ourselves] to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record." *Blackman*, 414 S.W.3d at 765. We examine a trial court's conclusion that a race-neutral explanation is genuine, and not a pretext, with great deference. *Id.*; *see Flowers*, 139 S. Ct. at 2244; *Nieto*, 365 S.W.3d at 676 ("Just like the trial court, the reviewing court must focus on the genuineness, rather than the reasonableness, of the asserted non-racial motive."); *Finley v. State*, 529 S.W.3d 198, 206 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("We will not disturb the trial court's ruling unless we are left with a definite and firm conviction that a mistake has been committed.").

## B.    Analysis

### Step one: whether English established a prima facie case

English challenged the strike of venire member Dudra Butler, who was African-American. The trial court then conducted a hearing. We assume that English satisfied his step-one obligation to make a prima facie case because the trial court proceeded immediately to the second-step inquiry. *Watkins v. State*, 245 S.W.3d

16

444, 447 (Tex. Crim. App. 2008) (stating when trial court proceeds to second step, reviewing court assumes opponent made prima facie case of purposeful discrimination and addresses only the second and third steps).

**Step two: whether the State offered a facially race-neutral explanation for the strike**

We now turn to the second step of the *Batson* analysis: whether the State provided an explanation for the strike against Butler that is race-neutral on its face. The State offered two race-neutral reasons for its strike of venire member Butler. First, the State stated that Butler was struck "because of her employment as a counselor." The State elaborated that in past experience, counselors tend to be "very believing . . . and very forgiving of people when they tell stories." The State struck two other venire members for the same reason. English concedes that the State offered a race-neutral reason for striking Butler, but he argues that the reason was not persuasive. Second, the State offered that when asked what she would do if two people gave stories that were different, Butler replied that it would be a reason to find the defendant not guilty because the two people would be lying. Given that English concedes that the State met its burden of production, we continue to the third step to determine if the State's race-neutral reasons were persuasive.

**Step three: whether English proved purposeful discrimination**

The trial court denied the *Batson* challenge without stating the basis for the denial. On appeal, English first argues that he met his burden of persuasion because

17

the State's second race-neutral explanation was factually inaccurate. As the party making the *Batson* challenge, English had the burden to show that the State's explanation given was merely pretext for discrimination. *Ford v. State*, 1 S.W.3d 691, 693–94 (Tex. Crim. App. 1999). English contends that the State's concern about Butler's response regarding conflicting testimony actually was an exchange that occurred with a different venire member. The State agrees that the prosecutor was mistaken in attributing the comments to Butler. Even so, English has not met his burden of persuasion to prove purposeful discrimination by simply showing that the State's proffered explanation was incorrect. *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002); *Ford*, 1 S.W.3d at 693–94 (proving on appeal that the State's proffered race-neutral reason involved a different venire member is "not equal to proving that the reason given was a pretext for a racially motivated strike"); *see also Grant v. State*, 325 S.W.3d 655, 660 (Tex. Crim. App. 2010) (stating reason for a peremptory strike need not actually turn out to be correct). English did not cross-examine the State regarding the mistake in identity nor did he provide the trial court with any evidence to rebut the State's claim. Proving purposeful discrimination by a preponderance of the evidence requires more than identifying factual error in the prosecutor's proffered race-neutral explanation. *Finley*, 529 S.W.3d at 210. On this record, we cannot say that the trial court's ruling in the third step of the *Batson* inquiry, to the extent it was based on the State's explanation regarding Butler's

18

stance on conflicting testimony, was clearly erroneous. *See Snyder*, 552 U.S. at 477; *Hernandez*, 500 U.S. at 369 (plurality op.).

The State also struck Butler based on her occupation. The court's ruling on the State's decision to strike Butler based on her occupation also was not clearly erroneous. English contends that striking Butler because she is a counselor was pretextual because the State did not inquire from Butler if her occupation would impede her ability to be fair and impartial. "*Batson* leaves room for the State to exercise peremptory strikes based on a 'hunch' or past experience, as long as racial discrimination is not the motive." *Nieto*, 365 S.W.3d at 679. The trial court stated on the record when denying the challenge that the State was "consistent in their strikes [of venire members employed as counselors]." The trial court's decision that the prosecutor's explanation was genuinely race-neutral was not clearly erroneous.

After examining the entire record, we hold that the trial court's decision to deny English's *Batson* challenge was not clearly erroneous. *See Blackman*, 414 S.W.3d at 765. We overrule his second issue.

### Ineffective Assistance of Counsel

In two issues, English contends that he received ineffective assistance of counsel. He asserts that his counsel did not file a motion to suppress and request a hearing on the admissibility and voluntariness of his custodial statement nor did his counsel object when the contents of the statement were admitted at trial through

19

Detective Reeves's testimony.[2] English contends his counsel was also ineffective for failing to object that the oral custodial statements were inadmissible because they were not recorded. We disagree.

## A.    Standard of Review

To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) a reasonable probability exists that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). The defendant bears the burden of proof on both issues, and failure to make either showing by a preponderance of the evidence will defeat his ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Under the first *Strickland* prong, any judicial review of whether counsel's performance was deficient must be highly deferential to trial counsel and avoid "the deleterious effects of hindsight". *Thompson,* 9 S.W.3d at 813. We begin by presuming that trial counsel performed within professional norms. *Id.* We do not assume that counsel lacked a sound reason for making the choices he did; on the contrary, the defendant must demonstrate that no plausible reason exists for a particular act or omission. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App.

---

[2]    No recorded statements were admitted during trial. Detective Reeves testified about statements English made during two custodial interviews.

2002); *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone*, 77 S.W.3d at 833. In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, and the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

Under the second *Strickland* prong, a defendant must show more than "that the errors had some conceivable effect on the outcome of the proceeding." *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693). The defendant must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt. *Id.* (quoting *Strickland*, 466 U.S. at 695). A reasonable probability is probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 670.

## B. Analysis

### 1. Failure to File Motion to Suppress

English first complains that a motion to suppress his statement should have been filed and that failure to do so rendered his counsel ineffective. A trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *Cotton v. State*, 480 S.W.3d 754, 757 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Ex parte Jones*, 473 S.W.3d 850, 854 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Counsel is not required to engage in the filing of futile motions. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991)). To prevail on an ineffective assistance claim based on counsel's failure to file a motion to suppress,

an appellant must show by a preponderance of the evidence that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998). To meet his burden, the appellant must produce evidence that would defeat the presumption of proper police conduct. *Id.* at 957.

English has not developed the record to establish ineffective assistance of counsel for failure to file a motion to suppress. English believes that a motion to suppress, if filed, would have been granted because he speculates that the custodial interviews were not electronically recorded. *See* TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(1) (stating that to be admissible, an oral statement by the accused during custodial interrogation must be electronically recorded). English assumes that because recordings of his statements to Detective Reeves were not admitted during the trial, the recordings do not exist.

The record before us does not affirmatively establish whether or not recordings existed. The record contains a list of all items provided to English by the State before trial. It was filed with the trial court and acknowledged by English and his counsel. The list includes two audio files tiled "Search warrant and follow up-William English.m4a" and "William English.m4a." Allegations of ineffectiveness must be firmly founded in and affirmatively demonstrated by the record. *Thompson*, 9 S.W.3d at 813. In the majority of cases, the appellant is unable to meet the first

prong of the *Strickland* test because the record is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata*, 226 S.W.3d at 430. We cannot determine from the record whether the audio files listed in the document tendered by the State to English are recordings of his interviews with Detective Reeves. Therefore, we cannot conclude that had English's counsel moved to suppress his statements, the motion would have been granted. *See Jackson*, 973 S.W.2d at 956–57.

### 2. Failure to Object to Detective Reeves's Testimony

English also claims that his counsel rendered ineffective assistance by failing to object when Detective Reeves testified regarding the statements he made during interviews with her. He alleges that his counsel should have objected because the statements would have been inadmissible if the statements were not recorded. *See* TEX. CODE CRIM. PROC. art. 38.22 § 3(a) (requiring recordings of oral custodial statements). English filed a motion for new trial, and no hearing on the motion occurred. He was then granted leave to file an out-of-time appeal, which would have allowed him to file a new motion for new trial and develop his ineffective assistance claim. Accordingly, trial counsel has not had an opportunity to explain his trial strategy in response to the matters that English now contends were deficient.

When the record is silent on the motivations underlying counsel's tactical decision, the appellant usually cannot overcome the strong presumption that

24

counsel's conduct was reasonable. *See Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). It is plausible that counsel strategically chose not to object to avoid calling further attention to the custodial statement. Counsel could have wanted to avoid admission of an electronic recording because if admitted, the jury would have been able to compare English's voice during the interview with the voice that can be heard in the surveillance video. English has not demonstrated that his counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

### 3.    *Strickland's* Second Prong

Furthermore, English has not shown that there is a reasonable probability that but for his attorney's alleged errors, the jury would have had a reasonable doubt about his guilt. *See Strickland*, 466 U.S. at 695. Detective Reeves's testimony regarding her two interviews with English focused on the ownership of the car he was driving and whether he had an alibi at the time of the robbery. At no time did English admit that he had robbed the convenience store or that he had been at the convenience store on the day in question.

This case revolved around identification. The jury was presented with surveillance video and testimony from law enforcement that when arrested, English looked like the man they had seen in surveillance video of the robbery. The jury

heard testimony that English gave officers a false name and date of birth when detained. The evidence also included photographs of English's clothing when arrested and photographs of a shirt found on a roof near the car wash where he was arrested. The jury also saw photographs of his shoes. One of the shoes and the shirt were admitted into evidence. The jury observed the defendant in the courtroom.

During deliberations, the jury could weigh the testimony presented and view the surveillance video and photographs in an effort to determine whether the State had proven beyond a reasonable doubt that English committed the robbery. Even without Detective Reeves's testimony, the jury had sufficient evidence before it to determine the issue of identity. Detective Reeves testified that English did not have an alibi and that he stated he had been driving around during the day of the robbery. Most of the evidence to determine identity came from the surveillance videos or law enforcement officers who observed English both in the videos and at the car wash. After reviewing the record, we hold that English has not met his burden under *Strickland* to establish that but for his counsel's errors related to his custodial statements to Detective Reeves, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 695.

### 4.    English's request for abatement

Seemingly conceding that the record is not fully developed to support his ineffective assistance claims, English urges this court to abate his appeal for further

development of the record. However, English has already had at least two opportunities to develop the record in regard to the claims. English filed a motion for new trial and motion for arrest of judgment on October 12, 2018. He was appointed counsel on October 15, 2018. English did not ask for a hearing on the motion, and the motion was overruled by operation of law on December 3, 2018. On November 20, 2019, the Court of Criminal Appeals granted English an opportunity to file an out-of-time appeal. The order stated: "All time limits shall be calculated as if the sentence had been imposed on the date on which the mandate of this Court issues" The Court of Criminal Appeals issued the order on November 20, 2019. The order effectively returned English to the point in time immediately after the trial court signed the judgment of conviction, at which point he could give notice of appeal, and with aid of counsel, obtain a meaningful appeal. *See Mestas v. State*, 214 S.W.3d 1, 4, (Tex. Crim. App. 2007). English was also permitted to file a motion for new trial to develop the record to support his ineffective assistance of counsel claim. *See id.* (granting out-of-time appeal extends time in which party can file motion for new trial).

English urges this court to abate the appeal for further development of the record. *See* Tex. R. App. P. 43.6 ("[C]ourt of appeals may make any other appropriate order that the law and nature of the case require."). English does not allege that he was denied effective assistance during the time periods he had to file a motion for

new trial, nor does he otherwise explain why he was prevented from developing the record.

We hold that English has failed to meet his burden to show that his counsel's performance fell below a reasonable standard of conduct or that but for his counsel's alleged errors, the result of the proceeding would have been different. We overrule English's two ineffective assistance of counsel issues.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Kelly, Guerra, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).